**In re Petition for DISCIPLINARY ACTION AGAINST Lawrence E. SHINNICK, an Attorney at Law of the State of Minnesota.**

No. CO–95–1217.

Supreme Court of Minnesota.

July 25, 1996.

Marcia A. Johnson, Director, Martin A. Cole, Sr. Asst. Director, Office of Lawyers Professional Responsibility, St. Paul, for Appellant.

Lawrence E. Shinnick, Plano, TX, Pro Se.

## OPINION

PER CURIAM.

On May 31, 1995, the Director of the Office of Lawyers Professional Responsibility served a petition for disciplinary action against Lawrence E. Shinnick, who was admitted to the practice of law in Minnesota on May 10, 1985. Shinnick interposed an answer denying all allegations of misconduct, and the matter was referred to a referee, who conducted a hearing and issued findings of fact, conclusions of law, and a recommendation for discipline. Because Shinnick failed to order a transcript of the hearing before the referee, the referee's findings of fact and conclusions of law were deemed conclusive, pursuant to Rule 14, Rules on Lawyers Professional Responsibility.

Prior to this petition for disciplinary action, there was no record of any other disciplinary proceedings against Shinnick; and the misconduct alleged in this case arose not from professional activity, but from a series of corporate transactions involving Shinnick in his personal capacity or as a corporate officer or board member. In January of 1984, Shinnick became an officer and director of Software Strategies, a company in which he owned an equity interest. Shinnick personally guaranteed loans of $1.7 million, $600,000, and $75,000 to Software Strategies, but the company nevertheless failed in April of 1984. After its failure, Shinnick was sued on the notes, and judgments totalling $2.5 million were entered against him.

In 1989, Shinnick and several of his acquaintances formed an investment group, First Excelsior Capital Corporation, with the intention of purchasing effective control of a company called Unisource Corporation. Shinnick began negotiations with Gerald W. Simonson, then director and president of Un-

isource, concerning the sale of Unisource stock to himself and to First Excelsior. During the course of the negotiations, Shinnick informed Simonson of the failure of Software Strategies; but he did not inform Simonson that he was the debtor on outstanding judgments of $2.5 million ($4.5 million including interest accrued). Shinnick also mentioned the names of several possible investors, but he did not tell Simonson the specific amount of investment expected from each investor. Simonson did not conduct an inquiry or investigation of Shinnick's financial capabilities at any time during the negotiations.

On August 21, 1989, Simonson and other Unisource shareholders sold 97,841 shares of Unisource stock to First Excelsior for $195,682. First Excelsior financed its purchase of the shares by borrowing $200,000 from one of the group investors, George Osborne. Shinnick guaranteed this loan by signing a $100,000 note in favor of Osborne. The shares purchased constituted approximately 20 percent of all shares issued, which was not sufficient to give First Excelsior effective control of Unisource.[1] However, Simonson and the other directors of Unisource resigned; and Shinnick and several other investors in First Excelsior were elected as the new board of directors. Shinnick was chosen to be the new president of Unisource.

Soon after the stock sale, Simonson learned about the outstanding judgments against Shinnick, and he demanded that the sale be rescinded. Osborne likewise demanded repayment of his $200,000 loan to First Excelsior. Shinnick did not agree to a rescission, and acting as president of Unisource, he engaged in several transactions using Unisource funds. On or about September 8, 1989, he executed a preliminary subscription agreement with Pacific Land Holdings, Inc., which provided that Unisource would pay Pacific $500,000 and issue to Pacific 300,000 shares of Unisource stock, in exchange for 1.5 million shares of Pacific's preferred stock. Shinnick caused Unisource to pay $125,000 of the $500,000 and to draft a 300,000 share certificate of Unisource stock; the certificate was never delivered to Pacific. Neither Shinnick, nor any of his family members, nor any corporation with which he was involved, was a shareholder of Pacific.

On September 19, Shinnick caused Unisource to pay $200,000 to First Excelsior in exchange for 100 shares of preferred stock in First Excelsior. Shinnick did this despite the fact that under the terms of its certificate of incorporation, First Excelsior was not authorized to issue preferred stock. The 100 shares of preferred stock were never issued, but First Excelsior used the $200,000 to repay the loan from Osborne.

Simonson ultimately commenced a lawsuit against Shinnick, two other investors, and First Excelsior in connection with the activities described above. Shinnick, as president of Unisource, caused Unisource to pay $25,000 for his legal fees in defending the lawsuit. On February 21, 1992, the attorneys representing Shinnick and First Excelsior moved for an order authorizing their withdrawal from further representation because Shinnick had failed to pay fees owed to them. The district court granted the motion to withdraw on February 24, 1992, the day when proceedings commenced. Shinnick, who apparently had not been informed of the order granting the motion to withdraw, did not appear before the district court that day, so he was deemed to have waived his right to a jury trial, and a default judgment based on fraud was issued against him.

■ At the outset, it should be noted that although the referee concluded that by allowing the default judgment to issue, Shinnick had engaged in conduct prejudicial to the administration of justice and bringing disrepute upon the legal profession, in violation of Rule 8.4(d) of the Rules of Professional Conduct, under these circumstances permitting the entry of the default judgment did not constitute professional misconduct: In the Simonson action respondent represented himself, not a client, and any litigant is entitled to permit a default judgment to be taken against himself. Thus, the director properly refrained from alleging a violation of Rule 8.4(d) or other misconduct in connection with this behavior.

1. First Excelsior needed 150,000 shares to acquire effective control of Unisource.

■ The referee properly concluded, however, that Shinnick's role in the sale of First Excelsior stock to Unisource for $200,000, which was used to repay Osborne, did constitute deceit and fraud under Minn. R. Prof. Conduct 8.4(c), not only because Shinnick knew that First Excelsior was not authorized to issue preferred stock, but also because he had a "material financial interest" in the transaction but failed to show that it was fair and reasonable to Unisource. *See* Minn. Stat. § 302A.255, subd. 1 (1992). Shinnick also violated Rule 8.4(c) when he caused Unisource to pay $25,000 of his legal fees in the underlying lawsuit without following the required written procedure. *See* Minn. Stat. § 302A.521 (1994). We, too, conclude that although Shinnick was not acting as an attorney representing clients in either transaction, his conduct nevertheless warrants discipline.

■ In prior cases, we have observed that "[b]oth clients and nonclients have a right to assume that lawyers will treat them fairly and honestly in all of their dealings, whether professional or otherwise." *In re Larson*, 324 N.W.2d 656, 659 (Minn.1982) (quoting *In re Raskin*, 307 Minn. 233, 236, 239 N.W.2d 459, 461 (1976)). Thus, discipline is appropriate in some cases in which attorneys engage in misconduct outside of the practice of law. The discipline imposed has ranged from public reprimand for minor offenses to outright disbarment in cases involving misconduct such as excessive fraud and self-dealing. *See, e.g., In re Scallen*, 486 N.W.2d 393 (Minn.1992) (public reprimand for underpayment of federal income tax); *In re Vitko*, 467 N.W.2d 605 (Minn.1991) (public reprimand for failure to forward a bonus payment to the law firm); *In re Clasen*, 443 N.W.2d 190 (Minn.1989) (disbarment for engaging in as many as 20 deceptive and dishonest financial transactions involving unsophisticated and unsuspecting investors, failing to file income tax returns, and failing to cooperate with Lawyers Professional Responsibility Board); *Larson*, 324 N.W.2d at 659 (attorney disbarred for 13 counts of misconduct, 11 of which were related to his activities as a businessman).

The fraudulent conduct in this case is far more egregious than such conduct as the underpayment of taxes or the improper handling of a bonus payment, so a public reprimand would not be sufficient here. On the other hand, Shinnick's misconduct does not rise to a level warranting disbarment. Shinnick engaged in two fraudulent or deceitful financial transactions with sophisticated businessmen, who were not clients, and his actions were taken as the president and a board member of Unisource, not as a lawyer. In *In re Piper*, 452 N.W.2d 917 (Minn.1990), an attorney who had displayed "a pattern of dishonesty in financial transactions," including presenting insufficiently funded checks, making false statements, and using his position as an attorney to induce merchants to accept postdated checks was suspended for a minimum of 1 year. We also imposed a 1-year suspension in *In re Strid*, 487 N.W.2d 891 (Minn.1992), where an attorney who was acting as the sole shareholder, officer and director of a company fraudulently induced a handicapped former client to make an unsecured loan to him of $15,000.

In this case, the referee recommended imposing indefinite suspension for a minimum of 6 months, taking into account the fact that this was the first time Shinnick had been disciplined, as well as the fact that all of the misconduct involved Shinnick's actions in his personal capacity or as a corporate officer or board member. This minimum period of suspension is sufficient in light of the fact that Shinnick no longer resides in Minnesota and has not practiced law in this state for several years.

It is, therefore, the judgment of this court:

(1) Respondent Lawrence E. Shinnick is indefinitely suspended from the practice of law without right to petition for reinstatement prior to a date 6 months after the date of this opinion.

(2) Reinstatement shall be conditioned on compliance with the requirements of Rules 18 and 26, Rules on Lawyers Professional Responsibility.

(3) Respondent shall pay to the director the sum of $750 in costs pursuant to Rule 24,

Rules on Lawyers Professional Responsibility.

IT IS SO ORDERED.