In re Petition for DISCIPLINARY ACTION AGAINST Richard T. JELLINGER, an Attorney at Law of the State of Minnesota.

No. C3–00–1681.

Supreme Court of Minnesota.

Dec. 26, 2002.

Rehearing Denied Jan. 21, 2003.

Edward J. Cleary, Director, Candace M. Hojan, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN.

Edward F. Kautzer and Jack D. Nelson, St. Paul, MN, for Respondent Jellinger.

## OPINION

PER CURIAM.

In this attorney-discipline proceeding, we review the referee's conclusion that although Respondent Richard T. Jellinger violated the Rules of Lawyers Professional Responsibility (RLPR), he proved by clear and convincing evidence that his depression provided mitigation. We hold that Jellinger's claim of mitigation was not fully supported by the evidence. We also review the referee's recommendation that we suspend Jellinger for one year, retroactive

to August 17, 2001, and place him on conditional probation for three years. We conclude that a more severe discipline is appropriate.

Jellinger was admitted to practice law in Minnesota in 1982. He was in private practice from 1982 to about 1989 and from 1994 to 2001, ultimately operating as a sole practitioner specializing in family law, criminal defense, and estate planning and administration. He is currently suspended from the practice of law pending the outcome of this proceeding.

On May 3, 2001, we publicly reprimanded Jellinger and placed him on conditional probation for two years after an investigation by the Director of the Office of Lawyers Professional Responsibility (Director) revealed that he misused a trust account, neglected clients, and failed to cooperate with the investigation that led to the charges against him. *In re Jellinger,* 625 N.W.2d 143, 145 (Minn.2001). In the ensuing months, Jellinger ignored requests from the Director's office for information concerning the conditions of his probation. As a result, the Director petitioned for further disciplinary action and we temporarily suspended Jellinger from the practice of law on August 17, 2001.

The current disciplinary proceeding arises from a supplementary petition filed by the Director against Jellinger. The supplementary petition charged Jellinger with misappropriating client funds, failing to act with reasonable diligence, failing to communicate with clients, making false statements, exceeding the scope of representation, failing to expedite litigation, continuing noncooperation with the Director's investigation and other assorted acts of misconduct. Jellinger's answer alleged as mitigation that he suffered from depression during his period of misconduct.

The matter was assigned to a referee, who held a disciplinary hearing on the

supplementary petition. The evidence showed that Jellinger's operating account for his law practice had been closed by the bank in December 2000 for chronic overdrafts and that he thereafter used his client trust account to pay his operating and personal expenses. For example, the referee found that Jellinger, acting as the personal representative of an estate, misappropriated $5,200 of estate funds to his client trust account and then disbursed them for his personal benefit; told the heirs and the Director that he had paid $5,280 in federal fiduciary taxes on behalf of the estate, when he had paid nothing; misappropriated $10,000 from the estate account to his client trust account and disbursed the funds to himself or to personal and business creditors; and misappropriated $4,050 from the estate account to his client trust account and disbursed the funds for personal and business expenses.

The referee also found that Jellinger failed to communicate with his clients in an adoption matter, neglected two marital dissolution matters, made false statements to clients and failed to cooperate with the Director's investigation.

Jellinger testified on his own behalf and he called his treating psychologist, Dr. Sheldon Pinsky, as a witness. Dr. Pinsky had seen Jellinger on five occasions over a period of approximately two months, beginning in January 2002. Dr. Pinsky testified that he conducted a series of diagnostic interviews and psychological tests on Jellinger, including the Beck's Inventory Test and the Minnesota Multiphasic Personality Inventory ("MMPI"). Dr. Pinsky opined that Jellinger had a major depressive disorder; that he had been depressed for over two years; and that his professional misconduct was in large part a result of his depressive disorder, because he did not have the skills or the awareness to appreciate what was happening around him. Dr. Pinsky further opined that if Jellinger adheres to a regimen of antidepressant medication and bi-weekly cognitive therapy, over a period of two to three years, his depression is not likely to reappear.

On cross-examination, Dr. Pinsky acknowledged that the results of the Beck's Inventory Test indicated that Jellinger had only moderate depression. The Director did not call an opposing expert witness.

The referee concluded that Jellinger failed to comply with the terms of his probation, failed to communicate with clients, made false statements to clients, neglected clients, failed to expedite litigation, failed to cooperate with the Director's investigations, misappropriated client funds, and made misrepresentations of fact to the Director. In regard to Jellinger's depression, the referee found that Dr. Pinsky's opinions must be accepted because they were uncontested and they proved mitigation by clear and convincing evidence. He found that Jellinger's "misconduct was largely the byproduct of inadequate treatment of his depression." While the Director sought disbarment, the referee found that disbarment would be "unduly harsh" and, based on the finding of mitigation, recommended a one-year suspension, retroactive to August 17, 2001, and conditional probation for three years. The Director sought review.

### I.

The Director ordered the hearing transcript and notified this court within the ten-day time period allotted by Rule 14(e), RLPR. The referee's findings, therefore, are not conclusive and are subject to review. *In re Jensen*, 468 N.W.2d 541, 543 (Minn.1991). In attorney-discipline cases, we will uphold the referee's findings of fact and conclusions of law if they are sup-

ported by the evidence. *In re Bergstrom,* 562 N.W.2d 674, 677 (Minn.1997) (quoting *In re Copeland,* 505 N.W.2d 606, 608 (Minn.1993)).

█ The Director agrees with the referee's findings and conclusions regarding Jellinger's misconduct but disputes the referee's conclusion that Jellinger proved his claim of mitigation by clear and convincing evidence. When an attorney raises a psychological disability as a mitigating factor in an attorney-discipline case, he or she has the burden to prove by clear and convincing evidence that: (1) the attorney has a severe psychological problem; (2) the psychological problem caused the misconduct; (3) the attorney is undergoing treatment and is making progress to recover from the psychological problem which caused or contributed to the misconduct; (4) recovery has arrested the misconduct; and (5) the misconduct is not apt to recur. *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983).

We conclude that the evidence fell short on at least three *Weyhrich* factors: causation, recovery sufficient to arrest the misconduct and the misconduct is not apt to recur. As to the latter two, we determine that Jellinger's treatment by Dr. Pinsky, for only two months and during a period when Jellinger was suspended and not practicing, was too short to provide clear and convincing evidence that Jellinger's recovery was sufficient to arrest his misconduct or that the misconduct is not apt to recur. Dr. Pinsky himself prescribed a course of treatment that would take from two to three years to complete.

As to causation, we addressed the evidentiary standard for proof of depression as mitigation in *In re Pyles,* 421 N.W.2d 321 (Minn.1988). The attorney in *Pyles* was charged with misrepresentation and misappropriation of client funds and claimed mitigation based on depression.

*Id.* at 322–23. Two psychologists testified that the attorney suffered from a "psychological adjustment disorder" but agreed that this disorder did not prevent the attorney from knowing that his conduct was morally and ethically wrong. *Id.* at 326. We affirmed the referee's rejection of the mitigating evidence, concluding that the attorney's mental illness was "not a severe problem on a recognized psychological diagnostic scale and did not result in impairment of respondent's cognitive functions, his ability to direct his actions, or to know right from wrong." *Id.* at 325 (internal quotations omitted). Jellinger similarly failed to meet this standard by clear and convincing evidence.

While Dr. Pinsky's testimony may have been sufficient to prove some causal connection between Jellinger's depression and his passive misconduct (failing to act with reasonable diligence, expedite litigation, communicate with clients and cooperate with the Director's investigation), we are not persuaded that Dr. Pinsky's testimony proves that a causal relationship exists between Jellinger's depression and his affirmative acts of dishonesty (misappropriating funds from client accounts, making false statements to clients and making false statements to the Director's office). It is obvious that Jellinger possessed enough cognitive ability to understand that he needed to restore the funds that he repeatedly withdrew from the client trust account and the estate account. Jellinger's active manipulation of various accounts, in an attempt to avoid detection of his misappropriations, and his misrepresentations to the heirs and the Director's office, demonstrate that the depression had not impaired Jellinger's ability to direct his actions and that he continued to recognize that his actions were wrong.

On this record, we conclude that Jellinger failed to prove by clear and convincing

evidence that he satisfied all of the *Weyhrich* factors.

## II.

We now turn to the appropriate discipline in this case. We look not to punish, "but rather to guard the administration of justice and to protect the courts, the legal profession and the public." *In re Dovolis,* 572 N.W.2d 734, 736 (Minn.1998) (citations and internal quotations omitted). We consider: (1) the nature of the misconduct, (2) the cumulative weight of the rule violations, (3) the harm to the public and (4) the harm to the legal profession. *In re Hoedeman,* 620 N.W.2d 714, 717 (Minn. 2001). We give weight to the referee's recommendation, but the ultimate responsibility for determining the appropriate sanction rests with this court. *Pyles,* 421 N.W.2d at 325.

The Director argues that the circumstances of this case, coupled with the fact that this is Jellinger's second public disciplinary proceeding within two years, warrant disbarment. Indeed, ample precedent supports the sanction of disbarment in cases involving misappropriation of client funds. *See In re Samborski,* 644 N.W.2d 402, 407 (Minn.2002) (disbarment is the appropriate discipline for an attorney who misappropriated client funds and who made false statements to conceal misappropriation and client neglect); *In re Graham,* 609 N.W.2d 894, 897 (Minn.2000) (disbarment is appropriate where the attorney misappropriated client funds while on probation); *In re Weems,* 540 N.W.2d 305, 308 (Minn.1995) (attorney's misappropriation of client funds, neglect of client matters, violation of the terms of his second public probation, and failure to cooperate with the disciplinary investigation warrant disbarment). At the same time, we give some weight to the referee's recommendation that disbarment would be too harsh. We also recognize that Jellinger's depression was shown to have some causative relationship to his passive misconduct, that he is currently receiving professional treatment for his depression and that his former clients did not ultimately suffer any pecuniary loss as a result of his misconduct.

After considering all of these factors, we order:

1. Respondent Richard T. Jellinger is hereby disbarred pursuant to Rule 15, RLPR. Respondent's disbarment shall be stayed subject to the following conditions:

   a. Respondent's current suspension from the practice of law in the State of Minnesota shall continue indefinitely;

   b. Respondent may petition the Director for reinstatement not sooner than two years from the date of this order;

   c. Respondent is required to make periodic reports to the Director, in such form and with such frequency as the Director requires, regarding the progress of his treatment for depression, including regular reports from Dr. Pinsky;

   d. Respondent shall pay the Director the sum of $900 in costs and disbursements pursuant to Rule 24, RLPR; and

   e. Respondent's failure to comply with the conditions of this stay shall result in immediate disbarment.

2. If and when respondent petitions for reinstatement:

   a. There shall be a hearing on respondent's petition for reinstatement pursuant to Rule 18(d), RLPR;

   b. Respondent must show that he has successfully completed the Multistate Professional Responsibility Examination pursuant to Rule

18(e)(2), RLPR (respondent is exempt from the reinstatement requirement found in Rule 18(e)(1), RLPR); and

c. Respondent must demonstrate, by clear and convincing evidence, that he has successfully completed treatment for his depression, that his mental condition will not adversely affect his ability to practice law and that his misconduct is not apt to recur.

3. Upon reinstatement, respondent shall be on supervised probation for a period of two years under the conditions set forth in this court's order of May 3, 2001.

4. Respondent shall fully cooperate with the Director's efforts to monitor his compliance with the provisions of this order.

So ordered.