**In re PETITION FOR DISCIPLINARY ACTION AGAINST James L. BERG, a Minnesota Attorney, Registration No. 139105.**

**No. A07–563.**

Supreme Court of Minnesota.

Nov. 29, 2007.

Cassie Breta Hanson, Office of Lawyer's Professional Responsibility Saint Paul, MN, for Petitioner.

Phillip A. Cole, Lommen, Nelson, Cole, Stageberg, Minneapolis, MN, for Respondent.

## OPINION

### PER CURIAM.

This attorney discipline case concerns the appropriate discipline to be imposed on respondent James L. Berg. The Director of the Office of Lawyer's Professional Responsibility filed a petition and a supplementary petition for discipline alleging several acts of misconduct. Berg agreed that he committed the acts of misconduct alleged in the petitions by entering a stipulation for discipline with the Director. In the stipulation, Berg and the Director jointly recommended that Berg be suspended from the practice of law in Minnesota for a minimum of five years with conditions placed on reinstatement. Because of the presence of numerous mitigating factors and because it is appropriate in this case to give some deference to the Director's recommendation in the stipulation, we impose the discipline of a five-year suspension.

In October 1982, Berg was admitted to practice law in Minnesota. Until the Director filed the petition in this case, Berg had never been the subject of a disciplinary action. Berg initially filed an answer to the petition, but withdrew that answer and agreed to the allegations and those of the supplementary petition. Berg's acts of misconduct include misappropriation and mishandling of client funds, a single instance of forgery, making false statements, failing to communicate with clients, neglecting client matters, failing to enter written contingency fee agreements, and failing to cooperate with the disciplinary investigation underlying this case.

Berg admitted to misappropriating the funds of six different clients. During his representation of C.W., Berg misappropriated funds he received on C.W.'s behalf by disbursing the proceeds from his client trust account prior to April 1, 2005. To whom Berg made these disbursements is unclear, but his trust account retained a sufficient balance to cover the C.W. funds at other times during the Director's audit of this account. Then in May and June 2005, Berg misappropriated settlement funds he received on behalf of J.R. by withdrawing the entire amount from his client trust account. In October or November 2005, Berg misappropriated settlement funds he received on K.S.'s behalf by disbursing those funds from his client trust account. Berg made these disbursements after negotiating the check by forging K.S.'s signature on the endorsement. Sometime before November 18, 2005, Berg misappropriated funds he received on behalf of B.C. by disbursing them from his client trust account for his own use. Berg also misappropriated insurance premium and mortgage escrow funds he received for L.H. by disbursing them for his own use in February 2007. Finally, Berg misappropriated funds he received from G.B. as an advance fee payment and an appellate filing fee, by failing to deposit them in his client trust account. Berg agreed that each of these disbursements, and his failure to deposit money he received from G.B., violated Minn. R. Prof. Conduct 1.15(a) & (b) and 8.4(b) & (c). Berg agreed that his forgery of K.S.'s signature, though made under the mistaken belief that he was authorized to negotiate the check for K.S., violated Minn. R. Prof. Conduct 8.4(b) and (c).

During an audit of Berg's trust account from April 2005 through April 2006, the Director discovered that Berg deposited personal funds into and made personal cash withdrawals from his client trust account. Berg also authorized his own creditors to make electronic withdrawals from that account. He also failed to disburse

funds to clients by trust account checks. Berg and the Director agreed that these actions violated Minn. R. Prof. Conduct 1.15(a) and (b).

Berg failed to enter written contingency fee agreements with four different clients. Berg made these unwritten contingency fee arrangements with J.R. in March 2005, with K.S. in October 2003, with L.L.P. sometime before December 23, 2005, and with T.L. sometime before January 4, 2006. Berg also received settlement funds on behalf of J.R. for which he has never accounted. Berg agreed that his failure to execute written contingency fee agreements violated Minn. R. Prof. Conduct 1.5(c).

Berg disbursed to L.L.P. the portion of the settlement funds to which she was entitled, but he did not provide her a written statement showing the outcome of the matter or the method by which the funds were divided between his fees and her remittance. Berg did not provide K.S. and T.L. with documentation showing the outcome of their cases. Nor did he provide them with documentation showing the method of division between his fees and their remittance. Berg agreed that his failure to provide appropriate documentation to these clients violated Minn. R. Prof. Conduct 1.5(c).

Berg made false statements to G.B. and L.H. while representing them. He also made false statements to the Director during the disciplinary investigation. Berg told L.H. that he was unable to release funds to which she was entitled without first obtaining additional signatures. This statement was false because Berg had actually misappropriated the funds. Berg told G.B. that opposing counsel had asked Berg to withdraw G.B.'s appeal in March 2007 in order to settle the case. This statement was false because opposing counsel had actually contacted Berg about settling the case more than a month earlier. In response to a complaint K.S. made to the Director about Berg's representation, Berg falsely stated that he had received a settlement offer in December 2005 to which K.S. agreed. Berg had actually agreed to the settlement without K.S.'s consent in August 2005. Berg agreed that these acts violated Minn. R. Prof. Conduct 4.1 and 8.4(c).

Berg admitted to several instances of failing to communicate with clients and neglecting client matters. He failed to communicate with J.R.'s bankruptcy attorney in late 2005 about the status of funds Berg held on J.R.'s behalf. Berg also failed to resolve a lien on J.R.'s property. Berg failed to respond to K.S.'s attempts to contact him from August through December 2005. While handling an appeal for G.B., Berg failed to file a memorandum ordered by the court of appeals. This failure led to the dismissal of G.B.'s appeal. Berg never informed G.B. of the dismissal. Berg agreed that these acts violated Minn. R. Prof. Conduct 1.1, 1.3, 1.4(a), 1.4(a)(4), 3.2, 3.4(c), and 8.4(d).

Finally, Berg did not cooperate with the disciplinary investigation. He failed to comply with the district ethics committee investigator's and the Director's requests that he provide trust account records; failed to return settlement funds to J.R. pending the resolution of Berg's claim that Berg was entitled to them; failed to respond to the Director's March 2006 notice of investigation of Berg's representation of C.W. and another request regarding that representation in November 2006; failed to provide the Director with the file, retainer agreement, and trust account records related to his representation of G.B.; failed to provide trust account records related to his representation of L.H.; and failed to provide records related to the overdraft of his trust account. Berg

agreed that his lack of cooperation with the investigatory process violated Minn. R. Prof. Conduct 8.1(b) and Rule 25 of the Rules on Lawyers Professional Responsibility (RLPR).

Initially, Berg responded to the petition for discipline by denying many of its allegations. He later withdrew that answer and admitted all the allegations of the petition and supplementary petition as part of the terms of the stipulation. In the stipulation, the parties jointly recommended an indefinite suspension for a minimum of five years with conditions placed on reinstatement. Because the agreed acts of misconduct would justify disbarment, we invited the parties to file briefs explaining why Berg should not be disbarred.

In the memorandum attached to the stipulation, the Director described certain aspects of Berg's conduct and of his physical and psychological condition that were considered in mitigation of some of his misconduct. First, at the time briefs were filed the Director had verified that Berg had made restitution to all of his clients other than J.R. At oral argument, the Director confirmed that Berg had made restitution to J.R. Second, prior to this disciplinary action, Berg had no disciplinary history in over 20 years of practice. Third, before any of the events leading to this disciplinary action occurred, Berg was diagnosed with a terminal heart condition known as idiopathic dilated cardiomyopathy. For Berg, this condition carries with it a 70 percent likelihood of death within the next five years. Berg's treating cardiologist indicated that the loss of function in Berg's heart caused by his condition has resulted in a deterioration of the quality of Berg's life which may have had an impact on his ability to handle client matters effectively. Finally, Berg suffers from depression and anxiety as a result of this diagnosis. The Director recognizes Berg's depression as a mitigating factor with respect to his unintentional misconduct, but not with respect to his intentional misconduct.

 Because Berg does not challenge the allegations in the petitions and admits to engaging in professional misconduct, the only issue before us is the appropriate discipline to be imposed. *See In re Dovolis,* 572 N.W.2d 734, 736 (Minn.1998). "Disciplinary sanctions for professional misconduct are imposed to protect the public and the judicial system, and to deter future misconduct." *In re Crandall,* 699 N.W.2d 769, 771 (Minn.2005). In determining the appropriate sanction for professional misconduct by an attorney, we consider four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson,* 733 N.W.2d 458, 463 (Minn. 2007). Analogous cases provide guidance on the appropriate discipline in a given case, but sanctions are imposed on a case-by-case basis in light of aggravating and mitigating circumstances. *Id.* at 463–64.

## Nature of the Misconduct

We have generally said that cases involving misappropriation result in disbarment. *In re Wentzel,* 711 N.W.2d 516, 520–21 (Minn.2006). But we have occasionally imposed the less severe sanction of a lengthy suspension where substantial mitigating circumstances are present. And we have occasionally deferred to recommendation of the Director for suspension even where mitigating factors were not emphasized. *In re Rooney,* 709 N.W.2d 263, 272 (Minn.2006) ("[E]xtraordinary stress in an attorney's personal life, such as the serious illness of a loved one, is a mitigating factor that can lead to a sanction less than disbarment in a misappropri-

ation case."); *In re Neal,* 733 N.W.2d 117 (Minn.2007) (imposing 18–month suspension as jointly recommended where attorney misappropriated funds, without mention of mitigating factors); *In re Singer,* 630 N.W.2d 404 (Minn.2001) (accepting stipulation for indefinite suspension where attorney misappropriated funds, without mention of mitigating factors).

■ Berg's misconduct involved concealment of the misappropriation, failure to cooperate with the disciplinary investigation and other misconduct in addition to misappropriation. *See Rooney,* 709 N.W.2d at 269 (noting cases where disbarment followed several types of misconduct in addition to misappropriation). But Berg's misappropriations were accompanied by a number of mitigating factors.

■ In misappropriation cases it is appropriate to consider restitution to the affected clients as a mitigating factor so long as restitution is not "prompted by [an attorney's] fear of getting caught." *Rooney,* 709 N.W.2d at 271 (citing *In re Stromwall,* 481 N.W.2d 60, 62 (Minn.1992)). We agree with the parties that Berg's complete restitution to each of his clients should be considered in mitigation of his misconduct.

■ A factor that mitigates Berg's unintentional misconduct is his depression. Ordinarily, for an attorney's psychological disability to be considered a mitigating factor proof of five factors is required: (1) that the attorney has a severe psychological disability; (2) that the disability caused the misconduct; (3) that the attorney is seeking treatment; (4) that the treatment has stopped the misconduct; and (5) that the misconduct is not likely to recur. *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn. 1983). We agree with the Director that Berg's depression does not mitigate his intentional misconduct, such as misappropriation and the forgery of K.S.'s signature. *See In re Jellinger,* 655 N.W.2d 312, 316 (Minn.2002) (recognizing causal link between depression and "passive misconduct"). The Director acknowledges that Berg likely only meets the first of the *Weyhrich* factors, but our decisions have occasionally considered depression in mitigation where an attorney's psychological condition does not completely satisfy the *Weyhrich* test. *See Jellinger,* 655 N.W.2d at 316 (mitigating discipline where attorney made partial showing of causative relationship between depression and passive misconduct, receipt of treatment for the disability, and lack of pecuniary loss to clients stemming from misconduct); *In re Bergstrom,* 562 N.W.2d 674, 678 (Minn. 1997) (considering the significant role depression played in causing misconduct).

### *Cumulative Weight of Disciplinary Violations*

■ "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *Nelson,* 733 N.W.2d at 464 (citing *In re Oberhauser,* 679 N.W.2d 153, 160 (Minn.2004)). In *Nelson* we noted that an attorney's prior disciplinary history can be considered as an aggravating factor while considering the cumulative weight of an attorney's misconduct. 733 N.W.2d at 464–65. But we have also considered an attorney's lack of a disciplinary history as a mitigating factor in determining the appropriate discipline. *See, e.g., In re Hottinger,* 731 N.W.2d 827, 828 (Minn.2007) (noting the lack of a prior disciplinary record in 34 years of attorney's practice). We emphasize here that prior to the events leading to this disciplinary action, and before Berg's diagnosis with a terminal heart condition, he had no disciplinary history.

Because Berg engaged in multiple acts of misappropriation, dishonesty, and other forms of misconduct, however, the cumulative weight of his misconduct is great and warrants serious discipline. *See In re Holker*, 730 N.W.2d 768, 776 (Minn.2007) (imposing indefinite suspension where attorney mishandled trust account, failed to diligently represent clients, and failed to cooperate with the disciplinary investigation).

### *Harm to the Public and Harm to the Legal Profession*

 We must also consider the harm to the public and to the legal profession resulting from Berg's misconduct. The purpose of attorney discipline is not to punish the attorney but rather to protect the courts, the public, and the legal profession. *Jellinger*, 655 N.W.2d at 316. All of Berg's misappropriations have been repaid. But the harm to the public and the perception of the legal profession caused by an attorney's misappropriation of funds warrants serious discipline. *See In re Wentzel*, 711 N.W.2d at 522 (noting that misappropriation of client funds "reflects poorly on the entire legal profession and erodes the public's confidence in lawyers"). Berg's false statements and forgery also warrant serious discipline as they are akin to a "breach of trust." *See Nelson*, 733 N.W.2d at 465 ("Honesty and integrity are chief among the virtues the public has a right to expect of lawyers.").

Because of the Director's prominent role in the administration of the attorney discipline process, we give some deference to the Director's recommendation of discipline, particularly where contained in a stipulation with the attorney. We observe that under Rule 5, RLPR, the Director "shall be responsible and accountable directly to the [Lawyers Professional Responsibility] Board and through the Board to this Court for the proper administration of the Office of Lawyers Professional Responsibility and [the RLPR]." Although we are ultimately responsible for determining the appropriate discipline to be imposed in cases involving professional misconduct by attorneys, we recognize that Director is in the best position to weigh the cost and risk of litigation and to determine when a stipulated discipline will best serve the interests of the Board.

The Director and Berg stipulated to discipline based on the existence of mitigating factors. As in *Rooney*, "[t]he presence of numerous mitigating circumstances, none of which alone would suffice to avoid disbarment, persuades us that disbarment in this case is not necessary to achieve the goals of attorney discipline." 709 N.W.2d at 272. Because we agree that the presence of numerous mitigating factors makes disbarment unnecessary to achieve the goals of attorney discipline, we hold that Berg's misconduct warrants the discipline recommended by the stipulation.

Accordingly, we order that:

1. Respondent James L. Berg is indefinitely suspended from the practice of law in the State of Minnesota, effective 14 days from the date of this decision, and is ineligible to apply for reinstatement for a minimum of five years;

2. Berg shall comply with the notice requirements or Rule 26, RLPR;

3. Berg shall pay to the Director costs in the amount of $900 plus interest and disbursements in the amount of $583.66 plus interest pursuant to Rule 24, RLPR; and

4. If Berg seeks reinstatement, he shall comply in all respects with Rule 18, RLPR.

So ordered.