In re Petition for Disciplinary Action against Patrick Joseph FARLEY, a Minnesota Attorney, Registration No. 387773.

No. A08–1178.

Supreme Court of Minnesota.

Aug. 13, 2009.

Martin A. Cole, Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

Eric T. Cooperstein, Law Office of Eric T. Cooperstein, PLLC, Minneapolis, MN, for respondent attorney.

OPINION

PER CURIAM.

In February 2008, respondent Patrick J. Farley was convicted of one felony count of criminal solicitation of a minor over the internet. Subsequently, a petition for attorney disciplinary action against Farley was filed, and the case was assigned to a

retired district court judge to act as referee. Following a hearing, the referee concluded that Farley violated Minnesota Rule of Professional Conduct 8.4(b). The referee recommended a six-month suspension. We affirm the finding of misconduct and suspend Farley indefinitely with no right to petition for reinstatement for a minimum of one year.

The material facts are undisputed. Farley graduated from William Mitchell College of Law in 2006 and was admitted to practice law in Minnesota on October 26, 2007.

On November 1, 2007, Farley entered an internet chat room and engaged in a sexually explicit conversation with a St. Paul police officer posing as a 14–year–old female. Subsequently, Farley was arrested and charged with one count of internet solicitation of a child for sexual conduct in violation of Minn.Stat. § 609.352 (2008). Farley pleaded guilty, was convicted of the felony charge against him, and sentenced on the conviction. The sentence imposed was stayed for three years, provided that, among other things, Farley be placed on probation for three years, register as a sex offender, and complete sex offender treatment. Upon successful completion of his probation, Farley's offense will be deemed a misdemeanor pursuant to Minn.Stat. § 609.13 (2008).

At the disciplinary hearing, Farley admitted that he was convicted of criminal solicitation of a minor and stated that he was participating in sex offender treatment required by the State, as well as individual and group therapy through a religious organization. He also described

some of the family tensions he experienced growing up, which included two incidents of sexual abuse during his childhood that resulted in treatment at a psychiatric institution for three weeks.

Two officials from Farley's church testified to Farley's good character, his participation in church activities, and his successful participation in therapy with the religious organization. Farley's wife also testified to his good character and described some of the measures they were taking to comply with Farley's probation.

Dr. Douglas Frey, a clinical psychologist with experience in diagnosing and treating sexual disorders, performed a psychological evaluation of Farley and concluded that Farley has an anxiety disorder. Based on his evaluation, Dr. Frey concluded that it was unlikely that Farley would re-offend. Dr. Mark Laaser, Farley's primary therapist, concurred with Dr. Frey's assessment of Farley, and concluded that Farley is making progress in his treatment and that it was unlikely Farley would re-offend.

On January 8, 2009, the referee issued his Findings of Fact, Conclusions of Law, and Recommendation for Discipline. The referee found that Farley had violated Minnesota Rule of Professional Conduct 8.4(b), but that Farley's conduct was mitigated on the grounds that the offense occurred outside the practice of law and that Farley was making progress in his sex offender treatment.[1] The referee recommended that Farley be suspended from the practice of law for six months.

## I.

Farley concedes that the conduct underlying his felony conviction constitutes a

---

1. Minnesota Rule of Professional Conduct 8.4(b) states that it is professional misconduct for a lawyer to: "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."

violation of Minnesota Rule of Professional Conduct 8.4(b). Farley argues, however, that the referee erred in not finding that his psychological condition, his remorse, the lack of harm to his clients, his good character, and his cooperation with authorities were mitigating factors in determining the appropriate discipline.

■■■ Because a transcript was ordered, the referee's findings of fact and conclusions of law are not binding on our court. *In re Peterson,* 718 N.W.2d 849, 853 (Minn.2006). Nonetheless, we give "great deference" to the referee's findings. *In re Wentzell,* 656 N.W.2d 402, 405 (Minn. 2003). We will uphold a referee's findings and conclusions "if they have evidentiary support in the record and are not clearly erroneous." *In re Moulton,* 721 N.W.2d 900, 905 (Minn.2006). Further, we will review the lack of particular findings for clear error. *In re Grigsby,* 764 N.W.2d 54, 60 (Minn.2009). The court must be "left with the definite and firm conviction that a mistake has been made" before determining that a referee's findings are clearly erroneous. *Peterson,* 718 N.W.2d at 853 (internal quotation marks omitted).

## A. Farley's Contentions

■■■ Farley argues that his psychological condition is a mitigating factor. When an attorney raises a psychological disorder as a mitigating factor, the attorney must prove by clear and convincing evidence: (1) a severe psychological disorder; (2) the psychological disorder caused the misconduct; (3) the attorney is undergoing treatment and is making progress to recover from the psychological disorder that caused or contributed to the misconduct; (4) recovery has arrested the misconduct; and (5) the misconduct is not apt to recur. *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983). When the Director of the Office of Lawyers Professional Responsibility has proven misconduct, the burden shifts to the attorney to prove the psychological disorder. *See id.*

Farley contends that the referee erred in finding that his conduct was not caused by his sexual dysfunction. Specifically, he argues that the referee should not have applied the "right from wrong" test used in *In re Jellinger,* 655 N.W.2d 312, 315 (Minn.2002). He urges us to adopt a "proximate cause" test. But Farley misconstrues our case law regarding psychological disorder as a mitigating factor.

In *Jellinger,* we considered whether the attorney's "moderate depression" satisfied the *Weyhrich* test. *Jellinger,* 655 N.W.2d at 314–15. The referee found that Jellinger's "misconduct was largely the byproduct of inadequate treatment of his depression" and therefore Jellinger proved mitigation. *Id.* at 314. On appeal we reversed, concluding, among other things, that Jellinger's expert testimony did not establish that Jellinger had a psychological disorder that was severe or that a causal relationship existed between Jellinger's depression and his affirmative acts of dishonesty. *Id.* at 315. We observed that in *In re Pyles,* 421 N.W.2d 321 (Minn.1988), we affirmed the referee's rejection of a psychological disorder as a mitigating factor based on the finding that the disorder was not "a severe problem on a recognized psychological diagnostic scale and did not result in impairment of [Pyles'] cognitive functions, his ability to direct his actions, or to know right from wrong." *Jellinger,* 655 N.W.2d at 315 (quoting *Pyles,* 421 N.W.2d at 325) (internal quotation marks omitted).

Thus, *Jellinger* did not adopt a new "right from wrong" test to satisfy the *Weyhrich* factors regarding severity or

causation. Rather, *Jellinger* simply concluded that the expert testimony failed to establish severity and causation under *Weyhrich.* As a result, we concluded that Jellinger had not met all of the *Weyhrich* factors for psychological disorder as a mitigating factor. We reiterate that to satisfy the *Weyhrich* test, the attorney must prove, by clear and convincing evidence, that (1) he or she has a severe psychological disorder; (2) the psychological disorder caused the misconduct; (3) the attorney is undergoing treatment and is making progress to recover from the psychological disorder that caused or contributed to the misconduct; (4) recovery has arrested the misconduct; and (5) the misconduct is not apt to recur. *See Weyhrich,* 339 N.W.2d at 279.

■ Here, the referee found that "Respondent knew that his conduct was ethically and morally wrong so that his behavior was not caused by his sexual addiction/dysfunction," and did not find that this dysfunction was severe. We conclude that the referee conflated the first and second *Weyhrich* factors, regarding severity and causation respectively. To establish severity, Farley must show that the psychological disorder was severe, not that he knew that his conduct was "ethically and morally wrong." Farley presented no evidence that he suffered from a severe psychological disorder on a recognized psychological diagnostic scale. *See Pyles,* 421 N.W.2d at 325.

■ Further, the referee found that Farley's "behavior was not caused by his sexual addiction/dysfunction." Farley's own expert witness testified that Farley's disorder "indirectly" led to the offense. Indirect causation, however, is not sufficient to justify a finding of causation under

*Weyhrich. See In re Shoemaker,* 518 N.W.2d 552, 554 (Minn.1994). Thus, we conclude that Farley failed to satisfy two of the *Weyhrich* factors, and therefore his psychological disorder is not a mitigating factor.

■ Farley next argues that the referee erred in not crediting his remorse as a mitigating factor. The referee found that "there is no way to judge remorse in this case. This claim will not be considered either way." Whether an attorney has expressed remorse over his misconduct is an important consideration in determining the appropriate discipline for an attorney. *See In re Houge,* 764 N.W.2d 328, 339 (Minn.2009). We conclude that examination of remorse is an important issue and that the referee erred in failing to address it. Based on our review of the record, it appears that Farley has established that he had remorse for his conduct.

■ Farley next argues that the referee erred by not finding that his cooperation was a mitigating factor. The referee found: "Respondent cooperated with the criminal and disciplinary investigations. This is required by the rules, and is not a factor for mitigation in this case." Cooperation is required by Rule 25 of Minnesota Rules on Lawyers Professional Responsibility (RLPR), which states: "It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director, or the Director's staff, the Board, or a Panel." Previously, we have concluded that cooperation with disciplinary proceedings is required by Rule 25, and therefore it should not be considered a mitigating factor. *In re Moulton,* 721 N.W.2d 900, 906 (Minn.2006). Here, the referee's finding has support in the record and is not clearly erroneous.

■ Farley also claims that the referee failed to consider the "lack of harm to clients" as a mitigating factor. Lack of harm to clients may be considered as a mitigating factor. *In re Ray*, 452 N.W.2d 689, 694 (Minn.1990). The referee made no specific finding regarding lack of harm to clients, but did find that Farley's crime occurred outside the practice of law and therefore was a mitigating factor. Therefore, we conclude that the referee implicitly considered the lack of harm to clients as a mitigating factor.[2]

■ Finally, Farley claims that the referee should have concluded that Farley's overall good character is a mitigating factor. Although several witnesses testified to Farley's good character, the referee made no finding as to Farley's overall character. But the referee is free to reject an attorney's argument that the testimony presented is sufficient to support mitigation in a particular case. On this record, the referee's failure to find that Farley's overall good character should be considered in mitigation is not clearly erroneous.

## B. Director's Contentions

The Director argues that the referee erred in finding that Farley was "making very good progress" in his sex offender treatment and "[t]his progress is a mitigating factor as to the length of the suspension." The Director contends that the referee's finding effectively abrogates *Weyhrich*, in that an attorney could benefit from a claim of psychological mitigation even if the *Weyhrich* standard has not been met. Farley counters that we have previously treated facts that would satisfy individual *Weyhrich* elements as independent mitigating factors even when the *Weyhrich* standard itself has not been met. Farley relies on *In re Bergstrom*, 562 N.W.2d 674, 678 (Minn.1997), to support this argument.

In *Bergstrom*, the attorney claimed that he should not be suspended from the practice of law because any misconduct was a product of his depression that satisfied the *Weyhrich* test. 562 N.W.2d at 676, 678. We concluded that a stayed suspension was warranted because "Bergstrom's severe depression, for which he is being treated, played a significant role in causing his misconduct." *Id.* at 678. Farley relies on this language to argue that we will independently consider a *Weyhrich* factor in mitigation even when the respondent has not proven all the *Weyhrich* factors.

Farley's argument lacks merit for two reasons. First, *Bergstrom* implicitly concluded that the attorney had proven the *Weyhrich* factors. Specifically, the language quoted above satisfies the first two factors. And we stated in the next paragraph of the opinion that "while it is not completely certain that Bergstrom's misconduct has been arrested and will not recur, [evidence shows] that Bergstrom has made improvement in both his psychological condition and his legal practice. Significantly, the record reflects that, since beginning his solo practice, Bergstrom has

---

2. According to the Director, that misconduct occurred outside the practice of law may be relevant to the level of discipline ultimately imposed but has not been recognized as a "mitigating factor" by this court or by the American Bar Association. *See, e.g., In re Chacon*, 581 N.W.2d 355, 358 (Minn.1998) (considering fact that attorney misconduct occurred outside the practice of law in determining sanction, but not labeling that fact a "mitigating factor"); *In re Shinnick*, 552 N.W.2d 212, 214 (Minn.1996) (same); *see also* Am. Bar Ass'n, Standards for Imposing Lawyer Sanctions § 9.32 (1991).

not had any client complaints." *Id.* Thus, we concluded that Bergstrom's psychological problem was (1) severe, (2) caused his misconduct, (3) was being successfully treated, (4) had not led to further misconduct, and (5) was not likely to recur.

■■■■■ Second, we have only treated individual *Weyhrich* factors as independent mitigating factors in the case of unintentional or passive misconduct. *See In re Berg,* 741 N.W.2d 600, 605 (Minn.2007) ("Berg's depression does not mitigate his intentional misconduct. . . . [B]ut our decisions have occasionally considered depression in mitigation [of unintentional conduct] where an attorney's psychological condition does not completely satisfy the *Weyhrich* test."). Unintentional or passive misconduct encompasses conduct in the nature of client neglect, failure to expedite litigation, and failure to cooperate with an investigation—in other words, conduct that is in the nature of an omission rather than an act. *See Jellinger,* 655 N.W.2d at 314. Because Farley's misconduct was intentional, the individual *Weyhrich* factors are not considered in mitigation of his misconduct. Thus, we conclude that the referee erred in considering Farley's progress in sex offender treatment as an independent mitigating factor.

## II.

The Director argues that a three-year suspension, the period of Farley's criminal probation, is the appropriate discipline in this case but that disbarment is fully supportable under the circumstances. The Director also recommends that Farley be allowed to seek reinstatement while remaining a registered sex offender. Farley counters that a stayed six-month suspension, conditioned on his successful participation in his probation, is the appropriate discipline.

■■■■■ We place great weight on the referee's recommendation of discipline, but retain responsibility for determining the appropriate sanction. *In re Nelson,* 733 N.W.2d 458, 463 (Minn.2007). In determining the sanction, we consider four factors: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession. *In re Varriano,* 755 N.W.2d 282, 291 (Minn. 2008). We make our final determination about discipline on a case-by-case basis, after examining the acts of misconduct and after considering both aggravating and mitigating circumstances. *Nelson,* 733 N.W.2d at 463–64.

Minnesota Rule of Professional Conduct 8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Farley concedes that his conduct reflected negatively on his "fitness as a lawyer in other respects," and that discipline is warranted.

We have typically imposed suspensions or public reprimands for criminal conduct unrelated to the practice of law.[3] We have occasionally imposed disbarment for criminal conduct unrelated to the practice law, including serious drug-related offenses, crimes of violence, and acts involving dis-

---

**3.** *See, e.g., In re Davis,* 740 N.W.2d 568, 568 (Minn.2007) (imposing six-month stayed suspension pursuant to felony DWI); *In re Tier-* *ney,* 709 N.W.2d 262, 263 (Minn.2006) (imposing six-month stayed suspension pursuant to multiple shoplifting convictions).

honesty.[4] The Minnesota Sentencing Guidelines rank solicitation of children for sexual conduct at the same offense severity level as fifth-degree criminal sexual conduct, and we have suspended the licenses of attorneys convicted of fifth-degree criminal sexual conduct[5] and possession of child pornography.[6]

Previously, we have imposed a suspension that is concurrent with an attorney's criminal probation in a case of fourth-degree criminal sexual conduct. *See In re Kimmel*, 322 N.W.2d 224, 226–27 (Minn. 1982). In *Kimmel*, the attorney pleaded guilty and was convicted of fourth-degree criminal sexual conduct with a minor related to the unlawful touching of the genital area of a fully-clothed 13–year–old boy. *Id.* at 224. An ethics complaint was brought pursuant to this conviction, along with a separate ethics complaint arising from a similar unconsented-to genital touching of a 20–year–old man.[7] *Id.* at 225.

The referee considered Kimmel's reputation as an attorney and his strong record of community service and recommended that Kimmel be suspended for the duration of his probation. *Id.* at 225. We agreed and stated that Kimmel was "undergoing and cooperating with treatment ... [and is] unlikely to be a danger to the public or the profession." *Id.* at 227. We noted that previous sexual misconduct with minors cases provided limited guidance, as they mainly involved attorneys who for one reason or another did not contest their discipline or otherwise stipulated to disbarment.[8] *Id.* at 226.

Here, the referee recommended that Farley be suspended for six months, on

---

4. *See, e.g., In re Poindexter*, 493 N.W.2d 539, 540 (Minn.1992) (disbarring attorney pursuant to fraud conviction unrelated to the practice of law); *In re Wegner*, 291 N.W.2d 678, 678–79 (1979) (disbarring attorney pursuant to drug smuggling conviction); *In re Thompson*, 296 Minn. 466, 469, 209 N.W.2d 412, 414 (1973) (disbarring attorney pursuant to murder conviction).

5. *See, e.g., In re Martinez*, 718 N.W.2d 878, 878 (Minn.2006) (imposing six-month suspension as stipulated to by the parties).

6. *See, e.g., In re Flynn*, 679 N.W.2d 330, 330 (Minn.2004) (imposing five-year suspension). *But see In re McCarthy*, 528 N.W.2d 229, 229 (Minn.1995) (imposing disbarment on attorney who stipulated to disbarment after being indicted in federal court on 13 counts of possession of child pornography and pleading guilty to one count).

7. The adult victim had represented himself at a plea hearing opposite Kimmel when Kimmel was working as Stillwater City Attorney. *Kimmel*, 322 N.W.2d at 225. Kimmel developed a mentor-type relationship with the victim. *Id.* Some months after the court appearance, Kimmel invited the man into his office and touched the genital area of the victim's clothing. *Id.* No criminal charges were filed pursuant to this incident. *Id.*

8. While we have not yet considered what discipline is appropriate for internet criminal solicitation of a minor for sexual touching, several other courts have recently considered the issue. *See In re Lever*, 60 A.D.3d 37, 869 N.Y.S.2d 523, 524, 529 (N.Y.App.Div.2008) (suspending attorney for three years where attorney pleaded guilty to a misdemeanor after engaging in sexually-explicit internet chats with an undercover police officer posing as a 13–year–old girl and attempting to meet with the "girl"); *In re Engl*, 283 Wis.2d 140, 698 N.W.2d 821, 822–23 (2005) (imposing a public reprimand where attorney had engaged in on-line conversation with a detective posing as a 14–year–old girl, expressed interest in having sex with the "girl," arranged a meeting, and attempted to meet with the "girl"); *In re Childress*, 364 Md. 48, 770 A.2d 685, 687, 696 (2001) (imposing an indefinite suspension with the right to apply for reinstatement after one year where attorney had engaged in multiple sexually-explicit conversations with underage girls in an internet chat room and later met them). We note that this case is factually distinguishable from *Engl, Lever,* and *Childress,* in that Farley did not arrange an in-person meeting with the "girl" he solicited.

the ground that disbarment was not warranted under *Kimmel*. We agree with the referee that disbarment is not warranted, but we conclude that a six-month suspension is too lenient. In *Kimmel*, the length of suspension was concurrent with the length of the attorney's probation. While the probationary period is not a litmus test, it is a factor that we will consider in determining the appropriate discipline. Most importantly, we are guided by the *Varriano* factors. *See Varriano*, 755 N.W.2d at 291.

 Based on our review of the *Varriano* factors, we conclude that a one-year period of suspension is warranted. We do not lightly set aside the recommendation of the referee. But we are persuaded that the crime for which Farley was convicted is serious, and that Farley's conduct caused harm to the public and to the legal profession. Specifically, his proposal of inappropriate sexual activity to a vulnerable adolescent girl seriously undermines public confidence in the legal profession. We observe that the suspension that we impose today will extend to a future date that approximates Farley's three-year probation period. We suspend respondent Patrick Joseph Farley from the practice of law indefinitely effective within 14 days of the filing of this opinion, and he shall not have the right to petition for reinstatement for a minimum of one year from the date of this opinion. Reinstatement shall be pursuant to Rule 18(a)-(d), RLPR. In addition, Farley shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

So ordered.