**In re Petition for DISCIPLINARY ACTION AGAINST Lisa Jane MAYNE, a Minnesota Attorney, Registration No. 308705.**

No. A08–1522.

Supreme Court of Minnesota.

June 10, 2010.

Martin A. Cole, Director, Robin J. Crabb, Assistant Director, Office of Law-

yers Professional Responsibility, St. Paul, MN, for petitioner.

Peter Erlinder, St. Paul, MN, for respondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility petitions our court to take disciplinary action against Minnesota lawyer Lisa Jane Mayne. The Director asserts that Mayne violated Minn. R. Prof. Conduct 8.4(b) and (c) by taking money from her father in violation of Minn.Stat. § 609.2335, subd. 1(1) (2008) (financial exploitation of a vulnerable adult). At the time of the misconduct, Mayne was attorney-in-fact for her father who was in his mid-seventies and suffered from diabetes and the early stages of Alzheimer's syndrome. Mayne was charged with and pleaded guilty to the criminal charge of financial exploitation of a vulnerable adult. Because Mayne admits to misconduct in violation of Rule 8.4, the only issues for us to address are the presence of mitigating factors and the appropriate discipline. We conclude that Mayne has not proven the existence of significant mitigating factors that would warrant departure from the sanctions we generally impose for similar misconduct. Therefore, we impose the Director's recommended discipline of disbarment.

Mayne was admitted to practice law in Minnesota on May 11, 2001. At some point in 2005, Mayne's elderly father, who suffered from diabetes and the early stages of Alzheimer's syndrome, executed a power of attorney, and Mayne became his attorney-in-fact. From the time

Mayne became attorney-in-fact until April 2007 when the power of attorney was terminated, Mayne took approximately $60,000 from her father's bank accounts for her personal use. Further, Mayne failed to pay approximately $45,000 in bills to care facilities in which her father lived. After Mayne's sister alerted authorities regarding Mayne's conduct, Mayne was charged with and pleaded guilty to one count of felony financial exploitation of a vulnerable adult in violation of Minn.Stat. § 609.2335, subd. 1(1). Mayne was convicted of this crime and sentenced to 18 months in prison. The execution of her prison term was stayed during the pendency of 10 years probation. The terms of Mayne's probation included payment of $46,000 in restitution to her father, continuing psychological counseling, submission to DNA testing, serving 90 days in jail, and the payment of a $100 fine.

On August 19, 2008, the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against Mayne. The petition alleged that the actions underlying Mayne's criminal conviction violated Minn. R. Prof. Conduct 8.4(b) and (c).[1] Mayne responded to the petition, admitting its allegations and requesting discipline in the form of a suspension followed by a period of probationary reinstatement. We appointed a referee to hear the matter.

Mayne did not testify at her disciplinary hearing but called two witnesses to testify on her behalf—a counseling social worker who treated Mayne, and a psychologist who diagnosed and treated Mayne. Both the social worker and the psychologist worked at Ramsey County Mental Health Center where Mayne was a patient being

---

1. Minn. R. Prof. Conduct 8.4 states that "[i]t is professional misconduct for a lawyer to: ... (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

treated for psychological disorders. Both witnesses testified that Mayne had been a patient at Ramsey County Mental Health Center since February or March 2008, which testimony is corroborated by treatment-progress reports entered into evidence. Both witnesses also testified that Mayne began intensive outpatient treatment after the criminal complaint against her was filed but before she pleaded guilty in June 2008.

The social worker testified that Mayne regularly attended her therapy sessions, was a dedicated patient, and made progress in therapy. The treatment-progress reports in evidence generally corroborate the social worker's testimony. The psychologist testified that he had diagnosed Mayne with major depressive disorder and obsessive-compulsive disorder, which is a type of anxiety disorder. He testified that Mayne's disorders manifested themselves primarily through hoarding behavior. Hoarding, in the sense the psychologist used the term, means buying and saving items, which the hoarder irrationally believes she will run out of, motivating the hoarder to buy more and more of the same or similar items. Mayne's hoarding eventually resulted in the accumulation of so much clutter that her home was condemned.

The psychologist further testified that Mayne's major depressive disorder and obsessive-compulsive disorder negatively reinforce each other. He testified that the effects of the two disorders include low energy levels, a poor self-image, a poor view of life, as well as problems eating, sleeping, and leaving the house. He also testified that a major impact of all of these effects was that Mayne has had extreme trouble making affirmative decisions. An opinion letter written by the psychologist summarizing his diagnosis and treatment of Mayne was admitted into evidence at the hearing.

After the hearing ended, the referee made his recommendation. The referee concluded that Mayne's actions violated Minn. R. Prof. Conduct 8.4(b) and (c), a conclusion Mayne does not dispute. The referee noted that a felony conviction generally warrants disbarment unless significant mitigating factors exist and then proceeded to address a number of mitigating factors. *See In re Koss,* 572 N.W.2d 276, 278 (Minn.1997).

The referee addressed the *Weyhrich* factors for mitigation due to psychological disorder. *See In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983). The referee found that Mayne had proven by clear and convincing evidence that she met the first factor by showing that she suffered from a severe psychological condition and the third factor by showing that she was progressing in treatment for that disorder. But the referee further found that Mayne failed to prove the three other *Weyhrich* factors: that her psychological condition caused the misconduct, that her treatment had arrested the misconduct, and that the misconduct is not likely to recur. Despite his findings that Mayne failed to prove three of the five of the *Weyhrich* factors, the referee concluded that Mayne was still entitled to mitigation due to a psychological disorder, citing *In re Berg,* 741 N.W.2d 600, 605 (Minn.2007). The referee observed that "the Courts are giving more empathy to cases where there are significant mental health issues."

The referee next addressed other mitigating factors. He found that Mayne was not entitled to mitigation for remorse. He did find, however, that Mayne was entitled to mitigation due to a number of factors discussed in *In re Rooney,* 709 N.W.2d 263 (Minn.2006). In particular, the referee found that Mayne was entitled to mitiga-

tion because she (1) had no prior discipline, (2) is in the process of paying restitution, (3) cooperated with the Director, (4) was under extraordinary stress when she engaged in misconduct, and (5) acknowledged her problems and sought counseling.

Based on his findings, the referee recommended discipline in the form of an indefinite suspension with leave to apply for reinstatement at the end of Mayne's criminal probation, which is set to end in 2018. The referee added that the suspension should be "in no case less than five years." Further, the referee recommended that Mayne be required to pass the ethics part of the multi-state bar exam and pay costs of $100.

Both Mayne and the Director take exception to the referee's findings and recommendation, and both asked our court for review. On review, we must address two issues: whether the referee clearly erred in making his mitigation findings and whether the referee's recommended discipline is appropriate.

## I.

We begin our analysis by addressing the issue of whether the referee clearly erred in any of his findings regarding mitigation. Mayne admits that her actions underlying the felony conviction violated the Minnesota Rules of Professional Conduct, but she argues that the referee clearly erred in some of his mitigation findings. In particular, Mayne argues that the referee clearly erred by (1) finding that she failed to prove several of the *Weyhrich* factors; (2) rejecting mitigation based on Mayne's remorse, and (3) by failing to consider lack of harm to clients as a mitigating factor. The Director contends the referee (1) correctly found that Mayne failed to prove several *Weyhrich* factors; (2) clearly erred in considering psychological disability as a mitigating factor even though he found

that Mayne had not proven all of the *Weyhrich* factors; (3) correctly found Mayne lacked remorse; (4) clearly erred in considering extreme stress as a mitigating factor; (5) clearly erred in considering restitution as a mitigating factor; and (6) clearly erred in finding Mayne was entitled to mitigation for her cooperation with the Director.

### A. Mitigation based on psychological disorder: *Weyhrich* factors

■ We turn first to the question of whether the referee clearly erred in his findings regarding the *Weyhrich* factors. A lawyer seeking mitigation for a psychological disorder must prove by clear and convincing evidence each of five *Weyhrich* factors. *In re Farley*, 771 N.W.2d 857, 861 (Minn.2009) (citing *Weyhrich*, 339 N.W.2d at 279). The five *Weyhrich* factors are: (1) the lawyer suffered from a severe psychological disorder; (2) the psychological disorder caused the misconduct; (3) the lawyer is undergoing treatment and is making progress toward recovery; (4) the recovery has arrested the misconduct; and (5) the misconduct is not likely to recur. *Farley*, 771 N.W.2d at 861.

■ The referee found that Mayne suffered from a severe depressive disorder and obsessive-compulsive disorder, and these disorders constitute severe psychological disorders within the meaning of *Weyhrich*. The Director does not dispute this finding, and we conclude the finding is supported by the record. But the referee found that Mayne failed to prove by clear and convincing evidence that her psychological disorders are the cause of her misconduct. The main reason the referee gave for reaching this finding was his conclusion that Mayne produced no evidence that she suffered from her psychological disorders during the time period in which

her misconduct took place.[2] Mayne asserts that the referee's finding that she produced no evidence of the existence of her disorders during the period of her misconduct is incorrect.

The referee is correct that Mayne did not begin treatment with a psychologist until February 2008, months after Mayne's misconduct stopped due to the termination of her father's power of attorney in April 2007. But the psychologist's opinion letter clearly states that Mayne's disorders "have appar[e]ntly been in[ ]evidence for many years." The letter gives a number of reasons for that conclusion: Mayne never learned to drive due to phobias; she failed to open most mail and file tax returns for several years; and her house was condemned in September 2007 due to hoarding, which also involved her son being temporarily removed from her care. While there is no evidence that explicitly indicates that Mayne's disorders existed as early as 2005, the record as a whole indicates that Mayne has suffered from major depressive disorder and obsessive-compulsive disorder for a long time and that those disorders do not manifest themselves overnight. Therefore, we conclude that the referee erred when he found that Mayne did not suffer from her psychological disorders during the time period in which her misconduct occurred.

But even if Mayne's psychological disorders existed during the period of her misconduct, it does not appear that Mayne's disorders caused her misconduct in the sense the term "cause" is used in a *Weyhrich* analysis. The psychologist testified that "it seems that [Mayne's psychological disorders were] a very high proportion of

the determination of her conduct." But, as mentioned above, the psychologist went on to explain that Mayne's disorders would "have the effect of lowering energy level" and causing "vegetative symptoms." The psychologist testified that these effects "make it more difficult for the person to make decisions because of the lower energy. And problems making decisions are a key difficulty."

The following exchange on cross-examination is illustrative of the point made by the psychologist:

[Director]: Would [a person with Mayne's disorders] have difficulty making the decision to transfer [her] father's money from his bank account to [hers]?

[Psychologist]: People with obsessive compulsive disorder, even without the major depressive disorder, can have extensive and chronic difficulty making even the simplest kind of decisions.

The Director then pressed the psychologist on this point, asking directly whether Mayne's disorders would have caused difficulty making the affirmative decisions to take money from her father's bank accounts, or instead, if the disorders would have made it more likely that she would leave the money in the account. The psychologist responded "not necessarily," but did not explain the apparent contradiction. In his opinion letter, however, the psychologist characterizes Mayne's difficulty with decision making as "chaotic decision-making and deeply clouded judgment."

We agree with the referee's finding that Mayne's disorders appear to have caused her out-of-control hoarding behavior, and the financial strain of the hoarding may have provided Mayne with the motive to

---

**2.** The referee also found that Mayne had the ability to tell right from wrong, and concluded that fact alone would make it impossible for Mayne to satisfy the causation factor under *Weyhrich*. But since the referee issued his recommendation, we have made clear that there is no inability-to-tell-right-from-wrong requirement under *Weyhrich*. *See Farley,* 771 N.W.2d at 861–62.

take money from her father. Further, we agree that her "chaotic-decision making and deeply clouded judgment" may have facilitated her misconduct. But these are, at most, indirect causes of her misconduct, and indirect causation is not enough to justify a finding of causation under *Weyhrich*. *See Farley*, 771 N.W.2d at 862 (citing *In re Shoemaker*, 518 N.W.2d 552, 554 (Minn.1994)). If a lawyer's misconduct consists of failing to do something she is supposed to do—i.e., misconduct by omission—psychological disorders such as Mayne's might be considered the direct cause of such misconduct. *Cf. In re Munns*, 427 N.W.2d 670, 672 (Minn.1988) (holding that failing to file income tax returns was caused by depression that manifested itself in self-destructive behavior). But that is not the case here. Mayne's misconduct involved affirmative illegal actions, and she has not proven that her psychological disorders directly caused those actions.

Because we conclude that Mayne's disorders did not directly cause her misconduct, which is required under a *Weyhrich* analysis, we conclude that the referee did not clearly err in his causation finding. Further, Mayne bears the burden of proving each *Weyhrich* factor by clear and convincing evidence in order to qualify for mitigation for psychological disability. *Farley*, 771 N.W.2d at 861. Because Mayne has failed to prove that her disorders directly caused her misconduct, we conclude that she has not met her burden and is not entitled to mitigation on the basis of her psychological disorders.

Having concluded that the second *Weyhrich* factor was not met, we need not address the remaining three *Weyhrich* factors. Nevertheless, we will briefly address two of the other factors in order to clarify their application. Specifically, we address the requirement that recovery must have arrested a lawyer's misconduct and the requirement that an attorney's misconduct must be unlikely to recur.

■ The language of *Weyhrich* requires that "the recovery has arrested the misconduct." *Weyhrich*, 339 N.W.2d at 279. The referee found that Mayne's treatment and recovery did not arrest her misconduct, because her misconduct was stopped by the termination of her father's power of attorney in April 2007, and Mayne did not begin psychological treatment until February 2008. The referee apparently interprets "misconduct" to mean only the particular misconduct for which the lawyer is currently facing discipline. But it would be incongruous that someone in Mayne's situation, whose misconduct was arrested by happenstance, should be less entitled to mitigation than someone whose misconduct continued unabated for a longer period of time until she eventually sought treatment and stopped the misconduct. Thus we interpret this requirement to mean that the treatment sought by the lawyer must have stopped the lawyer's current propensity to engage in similar misconduct.

■ We also disagree with the referee's interpretation of the requirement that a lawyer prove that the misconduct is unlikely to recur in the future. The referee found that "[n]o one can tell at this time whether the misconduct is likely to recur. The only true test would be to give Respondent an opportunity to be tested in real life." This tested-in-real-life standard appears impossible to prove. We interpret this requirement differently and conclude that a lawyer may prove that her conduct is unlikely to occur in the future through the presentation of evidence similar to the evidence Mayne presented in this case. Here, the psychologist offered his expert opinion that Mayne's "awareness of OCD and depression, and her greatly lessened depression and social anxiety ... have

made recurrence of the misconduct very unlikely." While a referee need not agree with this opinion, the referee must at least factor it into the analysis.

### B. Mitigation based on psychological disorder despite Mayne's failure to prove all *Weyhrich* factors

Citing *In re Berg*, 741 N.W.2d 600 (Minn.2007), the referee found Mayne's psychological disorders to be a mitigating factor despite the fact that she had not proven all five *Weyhrich* factors. The Director asserts that such a finding is clear error, as the referee has misread our case law. We agree with the Director.

■ While the referee is correct that we have considered psychological disorders as mitigating factors in some cases where the lawyer has failed to prove all of the *Weyhrich* factors, we have made it clear that we only do so in the context of unintentional or passive misconduct. *See Berg*, 741 N.W.2d at 605. On the other hand, we only consider psychological disorders as mitigating factors for *intentional* misconduct, such as Mayne's, if the lawyer has proven all of the *Weyhrich* factors. *Farley*, 771 N.W.2d at 864; *see also Berg* 741 N.W.2d at 605 ("Berg's [psychological disorder] does not mitigate his intentional misconduct.... [B]ut our decisions have occasionally considered [psychological disorders] in mitigation [of unintentional misconduct] where an attorney's psychological condition does not completely satisfy the *Weyhrich* test."). Because it is uncontested that Mayne's conduct was intentional, and because a psychological disorder is considered only as a mitigating factor for intentional misconduct if a lawyer proves all of the *Weyhrich* factors, we conclude that the referee clearly erred in considering Mayne's psychological disorders as a mitigating factor.

### C. Remorse

■ The referee made a finding rejecting mitigation based on Mayne's remorse. Because Mayne did not testify at her disciplinary hearing, the referee based his finding on an exchange between Mayne and the district court during Mayne's criminal sentencing. At the sentencing, Mayne stated that she was very sorry for her actions and that she took full responsibility for what she did. But the judge at Mayne's criminal sentencing questioned Mayne's sincerity, referencing apparently negative comments Mayne made about her parents during the presentencing investigation. The only other evidence of Mayne's remorse in the record is the psychologist's statement in which he briefly references Mayne's "apparent deep remorse." Because of the deference we give a referee's findings, and because the record is scarce on the issue of Mayne's remorse, we conclude that the referee did not clearly err in rejecting mitigation based on remorse.

### D. Lack of harm to clients

■ Mayne argues that the referee clearly erred in failing to make a finding that lack of harm to clients mitigates Mayne's misconduct. Lack of harm to clients may be considered as a mitigating factor in lawyer discipline cases. *In re Ray*, 452 N.W.2d 689, 694 (Minn.1990). And it is uncontested that Mayne's misconduct took place outside the practice of law, and that no clients were harmed. Thus we will consider lack of harm to clients as a mitigating factor in determining Mayne's discipline.

### E. Extraordinary stress

■ Citing *In re Rooney*, 709 N.W.2d 263 (Minn.2006), the referee found that Mayne was entitled to mitigation due to the extreme stress of having her home

condemned and losing some of her personal property. The Director contends that there is no evidentiary support in the record for the referee's finding. The Director is incorrect: Mayne stated at her sentencing hearing that her house was foreclosed on in late 2007. Further, the psychologist, in his testimony, made several mentions of the foreclosure proceedings and the stress it caused for Mayne. Because there is evidence in the record to support the finding, we conclude that the referee did not clearly err in finding Mayne's extreme stress as a mitigating factor.

### F. Restitution

■ The referee found that Mayne was entitled to mitigation for making restitution. It is not clear from the record before us how much restitution Mayne has paid, but she stated during her sentencing hearing that she "want[ed] to make the restitution as soon as [she] can." And the district court that sentenced her ordered her to pay restitution in the amount of $46,000 as a condition of her probation. Mayne stated in her brief to our court that she is currently paying restitution at the rate of $100 per month. It is undisputed that Mayne is currently indigent, and that $100 per month may be the most she can afford to pay. Given the deference we give to the findings of a referee, and because there is some evidence in the record of Mayne's intent to pay restitution, we conclude that the referee did not clearly err in finding that Mayne was entitled to mitigation on the basis that she is making restitution.

### G. Cooperation with the Director

■ The referee found that Mayne was entitled to mitigation because she had cooperated with the Director. But, as the Director points out, we have held that cooperation with the Director is a requirement and therefore cooperation with the

Director does not qualify as a mitigating factor. *Farley*, 771 N.W.2d at 862. Thus, we conclude that the referee clearly erred in finding Mayne entitled to mitigation for her cooperation with the Director.

### II.

■ Having determined the applicable mitigating factors, we turn to a determination of the appropriate discipline for Mayne's misconduct. The purpose of discipline for professional misconduct is not to punish the lawyer, but rather to protect the public and the integrity of the judicial system, and to deter future misconduct by lawyers. *In re Plummer*, 725 N.W.2d 96, 98 (Minn.2006); *In re De Rycke*, 707 N.W.2d 370, 373 (Minn.2006). In determining the appropriate discipline, we consider the nature of the misconduct, the weight of the rule violations, and the resulting harm to the public and to the legal profession. *See In re Nelson*, 733 N.W.2d 458, 463 (Minn.2007). In addition, we also consider any mitigating or aggravating factors. *See In re Houge*, 764 N.W.2d 328, 338 (Minn.2009). Although prior decisions provide guidance in enforcing consistent discipline, we impose discipline based on each case's facts and circumstances. *In re Redburn*, 746 N.W.2d 330, 334 (Minn.2008). A felony conviction, however, generally warrants disbarment unless significant mitigating factors are present. *In re Koss*, 572 N.W.2d 276, 278 (Minn.1997).

■ The Director argues that Mayne should be disbarred because she was convicted of a felony and because not enough mitigating factors exist to warrant a lesser sanction than disbarment. Mayne contends that she should be suspended from the practice of law indefinitely with leave to petition for reinstatement if and when she recovers from her psychological disorders.

As discussed in the facts section above, Mayne violated Minn. R. Prof. Conduct 8.4(b) and (c) by financially exploiting a vulnerable adult when she took money from her father in violation of Minn.Stat. § 609.2335, subd. 1(1). At the time of the misconduct, Mayne was attorney-in-fact for her father who suffered from diabetes and was in the early stages of Alzheimer's syndrome. Though Mayne was not acting in her capacity as a lawyer when she engaged in misconduct, her fiduciary duty as her father's attorney-in-fact was quite similar to the fiduciary duty a lawyer has to her client. Indeed, her misconduct was serious, and we have often disbarred attorneys who have acted similarly.

In *In re Rothstein*, we disbarred a lawyer convicted of felony theft by swindle from the law firm at which he was a partner. 777 N.W.2d 31, 31 (Minn.2010). We also recently agreed with jointly recommended discipline disbarring a lawyer who committed a felony involving dishonesty, among other violations. *In re Foster*, 771 N.W.2d 512, 512–13 (Minn.2009). Similarly, we have agreed with the jointly recommended discipline of disbarment of a lawyer convicted of willfully failing to pay child support of over $10,000. *In re Giberson*, 735 N.W.2d 683, 683 (Minn.2007). In *In re Andrade*, we disbarred a lawyer convicted of attempted theft by swindle of over $2500 from a client. 736 N.W.2d 603, 603–04 (Minn.2007). We also disbarred a lawyer convicted of mail fraud, wire fraud, and money laundering, among other crimes. *In re Pugh*, 710 N.W.2d 285, 286–87 (Minn.2006). In *In re Perez*, we disbarred a lawyer convicted of four counts of mail fraud. 688 N.W.2d 562, 565, 569 (Minn.2004). And in *In re Oberhauser*, we disbarred a lawyer convicted of money laundering for a client. 679 N.W.2d 153, 154 (Minn.2004). We also approved the stipulated discipline of a lawyer who was convicted of felony mail fraud, among other violations, *In re Klane*, 659 N.W.2d 701, 701 (Minn.2003), and agreed with the jointly recommended discipline of disbarment of a lawyer who was convicted of five counts of felony theft by swindle and misappropriation of client funds, *In re Amundson*, 643 N.W.2d 280, 280–81 (Minn. 2002).

Mindful of the sanctions we have issued in the recent past, we turn to an analysis of whether Mayne has proven significant mitigating factors to warrant deviation from the traditional discipline of disbarment. The referee made findings of two mitigating factors that are not challenged by the Director—Mayne had no prior discipline [3] and that Mayne acknowledged the problems that led to her misconduct and sought treatment for these problems. In addition, as discussed above, the misconduct in this case caused no harm to any clients; Mayne has paid some restitution and apparently plans to continue doing so; and Mayne suffered extraordinary stress due to the foreclosure proceedings on her home. But Mayne is not entitled to mitigation for her psychological disorders, remorse, or cooperation with the Director.

Based on the record before us, we conclude that the mitigating factors proven by Mayne fall short of what is required for us to deviate from the sanctions we generally impose for similar misconduct. Mayne's stress, restitution, lack of prior discipline, and seeking of treatment are not significant enough to outweigh her misconduct. Mayne's misconduct was very serious and resulted in great harm to her father. We seek to deter future similar abuses by

---

3. We do not hold that lack of prior discipline automatically warrants mitigation; rather, we consider lack of prior discipline as a mitigating factor here because the referee found such mitigation appropriate and because the Director did not challenge the referee's finding.

lawyers acting as attorneys-in-fact, especially by those acting as attorneys-in-fact for vulnerable persons. Therefore we conclude that Mayne's misconduct warrants disbarment.

Disbarred.