In re Petition for DISCIPLINARY ACTION AGAINST Stanley H. NATHANSON, a Minnesota Attorney, Registration No. 144046.

No. A10–0684.

Supreme Court of Minnesota.

Feb. 29, 2012.

Martin A. Cole, Director, Kevin T. Slator, Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, Minnesota, for petitioner.

Stanley H. Nathanson, Scottsdale, Arizona, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for disciplinary action alleging that respondent Stanley H. Nathanson's conduct in numerous client matters, including his failure to act with reasonable competence and reasonable diligence, failure to obtain informed consent and communicate with his clients, pursuit of appeals that were frivolous or not meritorious, knowing disobedience of tribunal rules, and, engagement in conduct prejudicial to the administration of justice, violated Minn. R. Prof. Conduct 1.1,[1] 1.3,[2] 1.4(a)(1)[3] and (3)[4], 3.1,[5] 3.4(c),[6] and 8.4(d).[7] The petition also alleged that Nathanson knowingly failed to respond to the Director's request for information in violation of Rule 25, Rules on Lawyers Professional Responsibility (RLPR),[8] and Minn. R. Prof. Conduct 8.1(b).[9] Following an evidentiary hearing, the referee concluded that Nathanson committed the violations as alleged and recommended that he be indefinitely suspended from the practice of law for a minimum of 90 days and that reinstatement, if any, be subject to the hearing provided for by Rule 18(d), RLPR. We adopt the referee's

1. Minnesota Rule of Professional Conduct 1.1 requires a lawyer to display "the legal knowledge, skill, thoroughness, and preparation reasonably necessary" to provide competent representation to a client.

2. Minnesota Rule of Professional Conduct 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client."

3. Minnesota Rule of Professional Conduct 1.4(a)(1) provides that a lawyer must "promptly inform the client of any decision or circumstance" requiring the client's informed consent.

4. Minnesota Rule of Professional Conduct 1.4(a)(3) requires a lawyer to "keep the client reasonably informed about the status of the matter."

5. Minnesota Rule of Professional Conduct 3.1 prohibits a lawyer from asserting or defending a claim or contention that lacks a non-frivolous basis in law or fact.

6. Minnesota Rule of Professional Conduct 3.4(c) prohibits a lawyer from knowingly disobeying an obligation under the rules of a tribunal.

7. Minnesota Rule of Professional Conduct 8.4(d) prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice.

8. Rule 25, RLPR, requires a lawyer who is the subject of a disciplinary investigation or proceeding to cooperate with the Director by, among other things, complying with reasonable requests for information.

9. Minnesota Rule of Professional Conduct 8.1(b) provides that a lawyer, in connection with a disciplinary matter, shall not knowingly fail to respond to a disciplinary authority's lawful demand for information.

conclusions and recommended discipline that Nathanson be indefinitely suspended from the practice of law for a minimum of 90 days, with conditions for reinstatement.

## I.

Nathanson was admitted to the practice of law in Minnesota on October 15, 1982. Nathanson resides in Arizona and currently does not practice law in Minnesota.[10]

In April 2010, the Director filed a petition for disciplinary action alleging that Nathanson violated ethics rules in his handling of numerous client matters between 2003 and 2009 and in his conduct during the Director's investigation. Nathanson answered the petition by generally admitting the facts, with some qualifications. Nathanson subsequently brought a motion to dismiss three of the four counts in the petition. Before the referee ruled on the motion, Nathanson requested a continuance due to financial hardship. The Director agreed to a 6–month continuance on the condition that Nathanson stipulate to the suspension of his license to practice law in Minnesota pending the outcome of these proceedings. We approved the stipulation and ordered Nathanson's license temporarily suspended. *In re Nathanson*, 788 N.W.2d 891, 891–92 (Minn.2010).

The hearing was held on April 1, 2011. At the hearing, the Director presented testimony and submitted numerous exhibits, but Nathanson did not appear and presented no evidence. On April 25, 2011, the referee filed findings of fact, conclusions of law, and a recommendation for discipline with this court. The referee did not expressly rule on Nathanson's motion to dismiss, but implicitly denied it by making findings and conclusions on all four counts in the petition.[11] The referee's findings are set forth herein.[12]

### A. The Client Complaint

A former client, D.C., filed a complaint regarding Nathanson's handling of his cases. In February 2005, D.C. retained Nathanson to sue three police officers for use of excessive force while pursuing and arresting him. In 2006, the Minneapolis Police Department internal affairs investigation sustained these allegations, but Nathanson failed to inform D.C. of that decision. In January 2007, Nathanson filed a lawsuit in Hennepin County District Court (Hennepin Case) against two of the police officers and the Minneapolis Police Department, and a lawsuit in Anoka County District Court (Anoka Case) against the third officer and the Spring Lake Park Police Department.

The Hennepin Case proceeded to arbitration, and in September 2007, the arbitrator awarded D.C. $25,000. Nathanson's co-counsel handled the arbitration, but neither he nor Nathanson informed D.C. of the arbitration award. As a result, the award was not accepted, and in January 2008, the Hennepin Case went to trial. During the trial, D.C. noticed the arbitration award in Nathanson's file and asked

---

**10.** During 2010, Nathanson's license to practice law was restricted for failure to comply with Minnesota's continuing legal education (CLE) rules and then suspended for failure to pay Minnesota attorney registration fees. Nathanson has not yet remedied these deficiencies by fulfilling his CLE and registration obligations, but those actions against his license are independent of this proceeding and play no role in our consideration of the matters now before us.

**11.** Nathanson subsequently renewed his motion to dismiss. We denied the motion. *In re Nathanson*, No. A10–0684, Order at 1 (Minn. filed July 18, 2011).

**12.** Because neither Nathanson nor the Director ordered a transcript of the referee's hearing, these findings of fact are conclusive. Rule 14(e), RLPR.

why he had not been told about it. Nathanson indicated that he felt the award was insufficient and wanted to try the case. On January 11, 2008, the jury returned a verdict for defendants and against D.C. In May 2008, without consulting D.C. and against D.C.'s wishes, Nathanson appealed D.C.'s case to the court of appeals. Nathanson, however, failed to order a transcript in the allotted time and failed to submit a $500 filing fee or seek an *in forma pauperis* (IFP) order. Subsequently, the court of appeals issued an order instructing him to submit the fee or seek an IFP order, or face dismissal of the case. Nathanson did not inform D.C. of the order or comply with it, and the case was dismissed.

In October 2008, the Anoka Case went to trial. Nathanson failed to comply with the district court's pretrial order regarding witness and exhibit lists, and failed to respond to discovery requests. As a result, the court limited D.C.'s witnesses and their testimony. After trial, the judge dismissed all of D.C.'s claims. In March 2009, without consulting D.C. and against D.C.'s wishes, Nathanson appealed the Anoka Case but did not file a statement of the case or certified copies of the judgment, and failed to submit a $500 filing fee or seek an IFP order. In April 2009, the court of appeals dismissed the appeal because Nathanson failed to remedy the filing deficiencies but allowed him a time-limited opportunity to reinstate the appeal by filing a motion accompanied by the missing documents. Nathanson took no further action in the case and failed to tell D.C. about the dismissal. Subsequently, the district court sanctioned Nathanson and ordered him to pay attorney fees of

$4,883.60 to the defendant within 60 days. He has not complied with that order.

## B. Other Appellate Matters

Pursuant to D.C.'s complaint, the Director also investigated Nathanson's conduct in other appellate matters. In July 2007, T.R. retained Nathanson to appeal her conviction for possession of a firearm by an ineligible person by seeking a new trial or reduced sentence. T.R. gave Nathanson a signed retainer agreement, an advance retainer fee of $2,000, and an application for IFP status. Nathanson filed the appeal but failed to file a statement of the case and did not submit T.R.'s IFP application or the $500 filing fee. The court of appeals ordered Nathanson to remedy the filing deficiencies or face possible sanctions, including dismissal of the appeal. Nathanson filed a statement of the case but did not submit T.R.'s IFP application or a filing fee. The court of appeals questioned whether it had jurisdiction over the appeal and ordered the parties to submit memoranda. Additionally, the court ordered Nathanson to pay the *filing fee or seek an IFP order.* He failed to comply with the order.

█ Subsequently, Nathanson filed a motion and memorandum in the district court to convert T.R.'s guilty plea into a *Lothenbach* plea.[13] The district court denied the motion, and Nathanson appealed. He submitted a statement of the case indicating that a transcript was necessary, but failed to file a transcript certificate. In June 2008, the court of appeals ordered him to file a transcript certificate or face possible sanctions, including dismissal of the appeal. Nathanson failed to comply, and the court dismissed T.R.'s appeal. He

13. The *Lothenbach* plea procedure is used for submitting a case to the court for decision while reserving pretrial issues for appeal. *State v. Busse,* 644 N.W.2d 79, 88 (Minn.

2002). *State v. Lothenbach,* 296 N.W.2d 854 (Minn.1980), has now been superseded by Minn. R.Crim. P. 26.01, subd. 4. *State v. Diede,* 795 N.W.2d 836, 842 n. 2 (Minn.2011).

did not inform T.R. that her appeal had been dismissed. Instead, T.R. learned of the dismissal when she wrote to the state public defender's office to inquire about the status of her case.

Between 2003 and late 2009, Nathanson also mishandled 11 other cases for 8 other clients. The similarity of his conduct in these cases makes it unnecessary to recount each instance separately. Briefly, Nathanson failed, in one case, to respond to requests for admissions and to appear at the hearing on opposing counsel's motion to compel. He failed, in numerous cases, to submit a filing fee or seek an IFP order, or to file a statement of the case, transcript, or copy of the judgment or order from which an appeal was taken. Subsequently, he failed to comply with requests from the clerk of appellate courts to remedy these filing deficiencies, failed to comply with court of appeals orders regarding filing deficiencies and failure to file briefs, and filed untimely motions to reinstate dismissed appeals.

This conduct frequently drew sanctions, including dismissal of the appeal in seven cases and denial of the opportunity to present oral argument in three cases.[14] Additionally, in one case, unanswered requests for admissions were deemed admitted, resulting in forfeiture of the client's vehicle.

### C. *Cooperation with Disciplinary Proceedings*

In June 2009, Nathanson voluntarily appeared at the Director's office to discuss the disciplinary investigation but did not bring his files related to the D.C. and T.R.

matters. The next day, the Director's office wrote to Nathanson with several follow-up questions. In early July, the Director agreed to Nathanson's requested extension of the deadline for his response to the Director's letter. Nathanson, however, failed to submit his response, and the Director wrote again in November 2009, requesting a response by December 1, 2009. Nathanson responded on January 27, 2010, stating that he had "nothing to add" to the information previously provided to the Director's office.

In July 2010, the Director's office left a voicemail for Nathanson inquiring about the status of his response to the Director's June 2009 letter. Nathanson submitted a letter a few days later stating that he did not "recognize the validity" of the Director's investigation into any matter not appearing in D.C.'s complaint. In September 2010, the Director inquired by letter about attorney fees charged to T.R. Nathanson again refused to respond to the questions.

The referee concluded that Nathanson's conduct violated Minn. R. Prof. Conduct 1.1, 1.3, 1.4(a)(1) and (3), 3.1, 3.4(c), 8.1(b), and 8.4(d), and Rule 25, RLPR. The referee recommended that Nathanson be suspended from the practice of law with no right to petition for reinstatement for a minimum of 90 days and that the reinstatement hearing provided under Rule 18(d), RLPR, not be waived.

### II.

Nathanson challenges the legal basis for these disciplinary proceedings and the referee's report on two grounds. First, he

---

14. In one of these cases, the court granted Nathanson's motion to reinstate the appeal but subsequently dismissed the appeal a second time when he failed to comply with another court order. In another case, the court gave him an opportunity to file a motion to reinstate the appeal, but he did not file the motion or take any further action on the case. In two other cases, the court reinstated the appeals despite Nathanson's failure to meet its deadline for filing the motion for reinstatement.

asserts that the Director lacked authority to investigate matters beyond the scope of the complaint filed by D.C. Second, he asserts that his refusal to cooperate with the Director's investigation on matters beyond the scope of D.C.'s complaint was excused. We will address each argument separately.

### A.

■ Nathanson asserts that under Rule 8(a), RLPR, the Director lacked authority to investigate matters beyond the scope of the D.C. complaint. Interpretation of the Rules on Lawyers Professional Responsibility is a question of law that we review de novo. *See In re Q.F.C.*, 728 N.W.2d 72, 79 (Minn.2007). In doing so, we examine the language of the rule to determine its plain meaning. *See id.* at 80.

Rule 8(a), RLPR, states:

At any time, with or without a complaint or a District Committee's report, and upon a reasonable belief that professional misconduct may have occurred, the Director may make such investigation as the Director deems appropriate as to the conduct of any lawyer or lawyers; provided, however, that investigations to be commenced upon the sole initiative of the Director shall not be commenced without the prior approval of the Executive Committee.

■ Pursuant to Rule 8(a), the Director may investigate professional misconduct in three specific situations: (1) pursuant to a complaint filed by a third party; (2) pursuant to a District Committee's report; and (3) without a complaint or Committee report, at the initiative of the Director. Rule 8(a), however, places three limitations on the Director's ability to conduct such an investigation. First, an investigation without a complaint or District Committee's report may not be commenced upon the *sole* initiative of the Director "without the

prior approval of the Executive Committee." Second, an investigation may be commenced only if the Director "has a reasonable belief that professional misconduct may have occurred." Third, when a reasonable basis exists for the Director to conclude that professional misconduct may have occurred, the Director may conduct "such investigation as the Director deems appropriate as to the conduct of [the] lawyer."

Nathanson argues that the Director's investigation in this case is limited by the "provided, however" clause of the rule. More specifically, Nathanson argues that the investigation is prohibited by the rule because it is an investigation "commenced upon the sole initiative of the Director" without prior Executive Committee approval.

■ The "provided, however" clause of Rule 8(a) applies to investigations commenced upon the sole initiative of the Director without a complaint. Consequently, we conclude that the clause does not apply to an investigation initiated by the Director pursuant to a complaint and does not bar the Director's inquiry into matters not raised in the complaint. Rule 8(a) does, however, place some limitations on the Director's authority to conduct an investigation beyond the allegations of the complaint. Specifically, the Director's discretion to "make such investigation as the Director deems appropriate" is limited to matters upon which the Director has a "reasonable belief that [additional] professional misconduct may have occurred." We also conclude that the Director may not unduly expand the scope of an investigation to explore matters not reasonably related to the original complaint.

■ The Director's investigation was commenced pursuant to the complaint filed by a former client, not upon the Director's

sole initiative. Based upon the results of the investigation, which showed Nathanson had failed to communicate with this client and mishandled his appeals, the Director had a reasonable belief that Nathanson may have committed similar misconduct in other appeals. The record supports the conclusion that the Director's additional investigation was reasonably related to the original complaint, and was appropriate. We therefore conclude that the Director was within his authority to investigate all of the matters alleged in the petition, including those not mentioned in the client complaint that initiated the Director's investigation.

### B.

Nathanson asserts that his refusal to cooperate with the Director's investigation on matters beyond the scope of D.C.'s complaint was excused on the ground that he also challenged the Director's authority under Rule 8(a) and therefore the referee erred in concluding that his refusal to cooperate constitutes "lack of cooperation" under Rule 25(b), RLPR, and misconduct under Minn. R. Prof. Conduct 8.1(b).

 When no transcript of an evidentiary hearing is ordered, however, the referee's factual findings and conclusions drawn from those facts are conclusive. *In re Montez,* 812 N.W.2d 58, 66 (Minn.2012); Rule 14(e), RLPR; *see also, e.g., In re Garcia,* 792 N.W.2d 434, 442 (Minn.2010); *In re Karlsen,* 778 N.W.2d 307, 311 (Minn. 2010). As a result, Nathanson's failure to order a transcript is dispositive of his claim that the referee erred in his factual findings and the conclusions that are drawn from those findings.

The referee found that Nathanson failed to cooperate throughout the Director's investigation. Specifically, Nathanson failed to respond to the Director's prepetition request for information on the matters under investigation, and when the Director followed up on that request, Nathanson answered by letter that he had "nothing to add." Nathanson also refused the Director's two post-petition requests for information because he did not believe the Director had the authority to request the information.

We therefore conclude that the referee's finding that Nathanson failed to cooperate is conclusive. Similarly, the referee's conclusion that Nathanson's conduct resulted in violations of Minn. R. Prof. Conduct 1.1, 1.3, 1.4(a)(1) and (3), 3.1, 3.4(c), 8.1(b), and 8.4(d), and Rule 25, RLPR, is conclusive. *In re Montez,* 812 N.W.2d 58, 66 (Minn. 2012); Rule 14(e), RLPR.

### III.

Having concluded that Nathanson's conduct resulted in the above-referenced violations of the rules of professional conduct, we must determine the appropriate discipline for this misconduct. The referee recommended that Nathanson be indefinitely suspended from the practice of law for a minimum of 90 days and that reinstatement, if any, be subject to the hearing provided for by Rule 18(d), RLPR, and other conditions. The Director agrees with the referee's recommendation. Except as discussed in Part II above, Nathanson makes no argument as to the appropriate discipline.

 The purpose of discipline for professional misconduct is not to punish the attorney but to protect the public and the judicial system, and to deter future misconduct by the disciplined attorney and other attorneys. *In re Rebeau,* 787 N.W.2d 168, 173 (Minn.2010). We place great weight on the referee's disciplinary recommendation but retain ultimate responsibility for determining the appropriate sanction. *In re Ulanowski,* 800

N.W.2d 785, 799 (Minn.2011). To determine the appropriate discipline, we consider four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violation; (3) the harm to the public; and (4) the harm to the legal profession." *Rebeau*, 787 N.W.2d at 173 (quoting *In re Nelson*, 733 N.W.2d 458, 463 (Minn.2007)). We also consider aggravating and mitigating circumstances, if any. *Id.* at 173–74. Prior decisions aid us in ensuring consistent discipline, but we impose discipline based on the unique facts of each case. *Ulanowski*, 800 N.W.2d at 799. We now turn to the four factors.

### A. Nature of the Misconduct

 Nathanson engaged in misconduct consisting of multiple instances of client neglect, failure to comply with court rules and orders, and failure to cooperate with the Director's investigation. Each of these categories constitutes misconduct subject to sanctions. *In re Brooks*, 696 N.W.2d 84, 88 (Minn.2005) ("A continuing pattern of client neglect is serious misconduct often warranting indefinite suspension by itself when no evidence of mitigating circumstances is present."); *id.* ("[F]ailure to cooperate with a disciplinary investigation, in and of itself, constitutes an act of misconduct that warrants indefinite suspension."); *In re Cutting*, 671 N.W.2d 173, 175 (Minn.2003) (stating that we "[have] disciplined lawyers who failed to comply with court orders and failed to appear at hearings").

### B. Cumulative Weight of Violations

Nathanson's misconduct applied to 14 client appeals, violated 8 different rules, and occurred over the course of several years. In most of the appeals, he repeatedly failed to comply with court rules and orders regarding the processing of those appeals. We have consistently held that "the cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *Ulanowski*, 800 N.W.2d at 801 (suspending attorney for minimum of 1 year for committing several types of misconduct in violation of 12 different rules); *see also, e.g.*, *Rebeau*, 787 N.W.2d at 175–76 (suspending attorney for minimum of 1 year for failure to file tax returns, trust account violations, failure to communicate with clients, and noncooperation with the Director).

### C. Harm to the Public and to the Legal Profession

 "The impact of the harm to the public and the profession requires consideration of the number of clients harmed and the extent of the clients' injuries." *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011) (citation omitted) (internal quotation marks omitted). Even when an attorney's conduct does not jeopardize a client's legal position, a lawyer's procrastination, neglect, and failure to communicate with a client "are intensely frustrating to the client, reflect adversely on the bar, and are destructive of public confidence in the legal profession," which harms the public, the profession, and the justice system. *In re Albrecht*, 779 N.W.2d 530, 541–42 (Minn. 2010) (citations omitted) (internal quotation marks omitted); *see also Ulanowski*, 800 N.W.2d at 801 (stating that failure to follow court rules undermines public confidence in the legal system). The profession is also harmed when an attorney causes needless expenditure of judicial and opposing counsel resources by, for example, misconduct that forces opposing counsel to file a motion that would not otherwise be necessary. *Albrecht*, 779 N.W.2d at 542.

Nathanson's misconduct adversely affected his clients in the processing of their

court cases. Specifically, his misconduct during discovery resulted in forfeiture of a client's vehicle and the subsequent need to appeal the forfeiture; his failure to file briefs resulted in waiver of oral argument in 3 cases; and his misconduct in filing and pursuing appeals resulted in the dismissal of 10 of the 14 cases considered in this proceeding. Moreover, Nathanson's misconduct in the court proceedings required the courts and opposing counsel to expend unnecessary time and resources, and thereby harmed public confidence in the legal system.

### D. Mitigating and Aggravating Factors

The referee concluded that there are no mitigating factors in this case. The referee also concluded that Nathanson's disciplinary history, his failure to acknowledge the wrongful nature of the misconduct and claim that it was justified, and his lack of remorse aggravate his misconduct.[15] Because no transcript was ordered, these conclusions are conclusive. *In re Montez,* 812 N.W.2d 58, 66 (Minn.2012); Rule 14(e), RLPR.

Disciplinary history and lack of remorse are aggravating factors. *Ulanowski,* 800 N.W.2d at 803 ("An attorney's disciplinary history constitutes an aggravating factor. More severe sanctions are appropriate when the current misconduct is similar to prior misconduct." (citation omitted)); *id.* ("[L]ack of remorse is an aggravating factor."). Here, Nathanson offered no evi-

dence that he is remorseful for his misconduct, and he has failed to acknowledge that his noncooperation constitutes misconduct. Moreover, the record shows that Nathanson received two admonitions prior to the initiation of these disciplinary proceedings, one of which involved client neglect in violation of rules he has also violated here.

### E. Similar Cases

Finally, we consider similar cases to ensure that our disciplinary decision is consistent with prior sanctions. The Director cites two cases to support his position that the referee's recommended discipline is appropriate: *In re Hawkins,* 725 N.W.2d 373 (Minn.2006), and *In re Crandall,* 699 N.W.2d 769 (Minn.2005).

In *Hawkins,* the attorney mishandled multiple state and federal appeals over a period of several years but fully cooperated with the disciplinary proceedings. 725 N.W.2d at 373. We approved a stipulation between the attorney and the Director for a stayed 60–day suspension, public reprimand, and 2 years of supervised probation. *Id.* at 373–74. Nathanson's misconduct is similar in frequency and character to the violations in *Hawkins,* but is distinguishable in that *Hawkins* did not involve the aggravating factors present here. Specifically, Nathanson's refusal to acknowledge his misconduct and lack of remorse call for a sanction more serious than the one we imposed in *Hawkins.*

---

**15.** The referee found as aggravating factors that (1) Nathanson's misconduct constitutes a pattern of misconduct, (2) the misconduct was serious and occurred over an extended period of time and across multiple matters, (3) the misconduct was intentional, (4) there is no evidence to suggest that similar misconduct will not occur again in the future, and (5) Nathanson failed to cooperate with the Director's investigation after the petition was filed.

The referee, however, made no conclusions of law regarding these additional "factors," and did not explicitly consider them in his disciplinary recommendation. As a result, we do not consider them as aggravating factors in our decision regarding the appropriate sanction in this case. *In re Montez,* 812 N.W.2d 58, 67–68 (Minn.2012); Rule 14(e), RLPR.

In *Crandall,* an attorney effectively abandoned three cases in federal district court. 699 N.W.2d at 770–71. The attorney failed to respond to motions and discovery requests, and to appear at motion hearings; neglected to inform a client of discovery requests, a counterclaim, a motion, and a court order; and withdrew and substituted other counsel without the client's permission. *Id.* The attorney's misconduct resulted in the dismissal of two of the cases, temporary suspension of the attorney from federal practice, and more than $30,000 in federal court sanctions, costs, and attorney fees. *Id.* We subsequently suspended the attorney for a minimum of 90 days and made a hearing under Rule 18, RLPR, a precondition of reinstatement. *Id.* at 772.

Given the cumulative nature of Nathanson's mishandling of appeals, we agree with the Director that discipline more serious than that imposed in *Hawkins* is appropriate. We also agree that the misconduct is comparable to that in *Crandall,* and note that our observation there that "the reinstatement procedure in Rule 18, RLPR, is necessary where, as here, the attorney has not adequately explained why the misconduct occurred and has not addressed how clients were harmed or what steps he has taken to prevent further misconduct" is equally applicable here. *See id.* at 772. The Director asks us to accept the referee's recommendation that Nathanson be suspended for a minimum of 90 days and the Rule 18 reinstatement hearing not be waived. We conclude that the recommended discipline is consistent with our prior cases involving similar misconduct, and is therefore appropriate.

## IV.

Based on the record before us, we conclude that Nathanson has engaged in serious misconduct warranting suspension for a minimum of 90 days.

Accordingly, we order that:

1. Respondent Stanley H. Nathanson is indefinitely suspended from the practice of law, effective 14 days from the date of filing of this opinion, and is ineligible to petition for reinstatement for a minimum of 90 days from the effective date of this suspension.

2. The reinstatement hearing provided for in Rule 18, RLPR, is not waived, and Nathanson shall not be reinstated to the practice of law until he has successfully completed the professional responsibility examination, satisfied continuing legal education requirements, and presented proof by clear and convincing evidence that he has undergone moral change, that he is fit to practice law, and that future misconduct is not apt to occur.

3. Nathanson shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

4. Nathanson shall pay $900 in costs and disbursements pursuant to Rule 24, RLPR.

So ordered.