STATE OF MINNESOTA

IN SUPREME COURT

A13-1611

Original Jurisdiction

Per Curiam

In re Petition for Disciplinary Action
against Paul Arthur Moe, a Minnesota Attorney,
Registration No. 264477.

Filed: August 13, 2014
Office of Appellate Courts

_____

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Paul Arthur Moe, Minnetonka, Minnesota, pro se.

_____

S Y L L A B U S

Disbarment is the appropriate sanction for an attorney who misappropriated funds from a ward, represented a client despite a conflict of interest, disobeyed court orders, failed to reply promptly to discovery requests, and knowingly made false statements to a tribunal.

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against attorney Paul Arthur Moe, arising out of Moe's service as a conservator and guardian. The petition alleged that Moe represented a client despite a

1

conflict of interest, disobeyed court orders, failed to reply promptly to discovery requests, misappropriated his ward's funds, and knowingly made false statements to a tribunal. Moe did not respond to the petition. Accordingly, we deemed the allegations in the petition admitted and invited the parties to submit briefs on the appropriate discipline. *See* Rule 13(b), Rules on Lawyers Professional Responsibility (RLPR). Only the Director filed a brief, and the Director recommends disbarment. Based on the professional misconduct that Moe committed, we conclude that disbarment is the appropriate sanction.

## I.

The misconduct at issue falls into five general categories. We discuss each in turn.

*Conflict of Interest.* O.M. retained Moe in January 2008 to represent O.M. in O.M.'s capacity as attorney-in-fact for his father, R.M. During the representation, Moe advised O.M. on financial matters related to R.M., including the receipt of Veterans Affairs (VA) benefits. By the end of January 2008, Moe had prepared a petition to have O.M. appointed as guardian and conservator for R.M., although the petition was never filed. Moe did no more legal work for O.M. In December 2009, L.M., another son of R.M., retained Moe to seek removal of O.M. as R.M.'s attorney-in-fact and to have Moe appointed guardian and conservator for R.M. Moe was appointed guardian and conservator for R.M. in February 2010. As guardian and conservator for R.M., Moe investigated whether O.M., his former client, committed malfeasance as attorney-in-fact for R.M.

Moe's representation of L.M. presented a conflict of interest. Moe obtained

2

confidential information in the course of representing O.M. that could have been used against O.M. during Moe's subsequent representation of L.M. *See Nat'l Texture Corp. v. Hynes*, 282 N.W.2d 890, 894 (Minn. 1979) ("An attorney should not use information he received in the course of representing a client to the disadvantage of that client."). Moreover, Moe investigated whether O.M. committed malfeasance while serving as attorney-in-fact for R.M. even though Moe's prior representation of O.M. was in O.M.'s capacity as attorney-in-fact. Under these circumstances, Moe violated Minn. R. Prof. Conduct 1.7(a)(2)[1] because his duty to O.M. to maintain client confidences created a substantial risk that his representation of L.M. would be materially limited. In addition, because Moe's investigation of O.M. was substantially related to his prior representation of O.M., Moe's representation of L.M. violated Minn. R. Prof. Conduct 1.9(a).[2]

*Failing to Comply with Discovery Requests and Disobeying Court Orders.* After R.M. died in February 2011, Moe filed a final account with the district court regarding his guardianship and conservatorship of R.M. L.M. disputed the final account. In the contested proceedings, Moe failed to respond to three separate discovery requests and a

---

[1]     Minnesota Rule of Professional Conduct 1.7(a)(2) prohibits a lawyer from representing a client when "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a former client."

[2]     Minnesota Rule of Professional Conduct 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

court order compelling discovery. Moe's repeated failure to respond to discovery requests violated Minn. R. Prof. Conduct 3.2,[3] 3.4(c),[4] 3.4(d),[5] and 8.4(d).[6]

*Misappropriation.* When he died, R.M. had $365.08 in a VA Medical Center personal account and $58.14 in a National Bank of Cokato account. Moe misappropriated these funds for his personal use. Misappropriation of these funds violated Minn. R. Prof. Conduct 8.4(c).[7]

*False Statements to a Tribunal.* The final account Moe submitted to the district court included intentional misrepresentations. Moe failed to include ledger entries for three checks, including one check made payable to himself for $2,000. Moe also hid $3,629.40 in payments to his law firm by misrepresenting the recipients and amounts of

---

[3] Minnesota Rule of Professional Conduct 3.2 states that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Although Minn. R. Prof. Conduct 3.2 focuses on "the interests of the client," we applied this rule to an attorney representing himself in a dissolution proceeding in *In re Ulanowski*, 800 N.W.2d 785, 797 (Minn. 2011). Accordingly, we apply Minn. R. Prof. Conduct 3.2 to Moe even though he was representing himself in the dispute over the final account.

[4] Minnesota Rule of Professional Conduct 3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal."

[5] Minnesota Rule of Professional Conduct 3.4(d) requires a lawyer to "make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party."

[6] Minnesota Rule of Professional Conduct 8.4(d) prohibits "conduct that is prejudicial to the administration of justice."

[7] Minnesota Rule of Professional Conduct 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

the checks in the ledger. Moe's intentional misrepresentations in his final account violated Minn. R. Prof. Conduct 8.4(c) and 8.4(d).[8]

*Failure to Pay Court-Ordered Restitution and Sanction.* After reviewing the final account, the district court determined that the rate Moe charged was excessive for the nature and type of work performed. Accordingly, the district court reduced Moe's fee and ordered Moe to reimburse R.M.'s estate for the excess fees that Moe paid himself. The district court also imposed a $5,000 sanction because Moe had acted in bad faith when discharging his duties as R.M.'s guardian and conservator. However, Moe neither reimbursed the estate for the excess fees nor paid the sanction. Because Moe failed to pay the court-ordered restitution and sanction, he violated Minn. R. Prof. Conduct 3.4(c) and 8.4(d).

## II.

The sole issue before us is the appropriate discipline to impose for Moe's misconduct. The Director argues that disbarment is the appropriate sanction. Moe fails to respond.

---

[8] The Director alleged in the petition that Moe's intentional misrepresentations in the final account violated Minn. R. Prof. Conduct 3.3(a)(1), which prohibits a lawyer from knowingly making a false statement to a tribunal. We recently interpreted Rule 3.3(a)(1) as applying only to false statements a lawyer makes when the lawyer is "representing a client" other than himself. *In re Albrecht*, 845 N.W.2d 184, 191 (Minn. 2014) (concluding that an attorney did not violate Minn. R. Prof. Conduct 3.3(a)(1) when he made a false statement while representing himself before a referee in a disciplinary proceeding). Because Moe represented only himself when he made the false statements in the final account, this conduct does not violate Rule 3.3(a)(1).

The purposes of disciplinary sanctions are to protect the public, protect the integrity of the judicial system, and deter future misconduct by attorneys. *In re Mayne*, 783 N.W.2d 153, 162 (Minn. 2010). Attorney punishment is not a purpose of disciplinary sanctions. *Id.* Four factors guide our determination of the appropriate discipline: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Grigsby*, 764 N.W.2d 54, 62 (Minn. 2009). Although we look to similar cases for guidance regarding disciplinary sanctions, we determine the appropriate discipline on a case-by-case basis after considering any aggravating and mitigating factors. *In re Hummel*, 839 N.W.2d 78, 81 (Minn. 2013).

We first consider the nature of Moe's misconduct. Moe's most serious violation involved the misappropriation of funds that belonged to his ward's estate. R.M. was a vulnerable adult to whom Moe owed a fiduciary duty as his guardian and conservator. *See Hoverson v. Hoverson*, 216 Minn. 237, 241, 12 N.W.2d 497, 500 (1943) ("A guardian is a fiduciary . . . ."). We have disbarred attorneys who misappropriated funds from non-clients to whom they owed a fiduciary duty. In *In re Mayne*, for example, we disbarred an attorney who took money from her father, a vulnerable adult for whom she was attorney-in-fact. 783 N.W.2d at 163-64. In doing so, we observed, "Though Mayne was not acting in her capacity as a lawyer when she engaged in misconduct, her fiduciary duty as her father's attorney-in-fact was quite similar to the fiduciary duty a lawyer has to her client." *Id.* at 163; *see also In re Amundson*, 643 N.W.2d 280, 280-81 (Minn. 2002) (order) (disbarring attorney who, while acting as a trustee, misappropriated money from a

trust established for the benefit of a disabled adult); *In re Olson*, 358 N.W.2d 662, 662-63 (Minn. 1984) (disbarring attorney for conversion of property while acting as attorney-in-fact and trustee for comatose sister-in-law).

Moe committed other significant acts of misconduct that also warrant discipline. He failed to pay a court-ordered sanction and restitution. In doing so, Moe wrongfully denied his ward's heirs money to which they were entitled. *See In re Taplin*, 837 N.W.2d 306, 312 (Minn. 2013) (describing attorney's refusal to return the unearned portion of advanced fees as "serious because, from the clients' perspectives, they were deprived of the use of their funds without any explanation").

Moe also made intentional misrepresentations to the district court in the final account. Making false statements to a court is serious misconduct and warrants severe discipline. *See In re Ruffenach*, 486 N.W.2d 387, 391 (Minn. 1992); *see also In re Winter*, 770 N.W.2d 463, 468 (Minn. 2009) (characterizing a false statement to a court as "prejudic[ial] to the administration of justice"). Among Moe's numerous misrepresentations in his final account are ledger entries that obscured payments he made to himself and his law firm using R.M.'s funds.

Moe failed to respond promptly to discovery requests and comply with court orders. Such repeated failure to comply with court orders is itself a ground for disbarment. *See In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012); *see also In re Grzybek*, 567 N.W.2d 259, 265 (Minn. 1997). During the litigation challenging the final account, Moe failed to respond to three separate discovery requests and failed to comply with a court order compelling discovery.

Finally, Moe represented L.M. despite having an impermissible conflict of interest. We have suspended attorneys in cases involving conflicts of interest. *See In re Varriano*, 755 N.W.2d 282, 291-92 (Minn. 2008). And we have imposed severe discipline when the misconduct included a conflict of interest and other acts of attorney misconduct involving dishonesty. *See, e.g.*, *In re Peterson*, 456 N.W.2d 89, 93 (Minn. 1990) (disbarring attorney who had a conflict of interest by entering into business transaction with a vulnerable client, made false statements to third parties, and forged documents).

To determine the appropriate disciplinary sanction, we also consider the cumulative weight of the disciplinary violations. *In re Fairbairn*, 802 N.W.2d 734, 743 (Minn. 2011). "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004). Here, Moe's misconduct occurred over a period of at least three and one-half years, beginning in December 2009 when he agreed to represent L.M. despite a conflict of interest and continuing until at least August 2013 when the Director filed the petition for disciplinary action. Moreover, disbarment particularly is warranted when an attorney misappropriates funds and commits other misconduct to conceal the misappropriation. *In re Rooney*, 709 N.W.2d 263, 272 (Minn. 2006). Moe's refusal to comply with discovery requests concealed his intentional misrepresentations in the final account and his misappropriation of his client's funds.

We also consider the extent of the harm to the public and the legal profession.

8

*In re Grigsby*, 764 N.W.2d at 62. Moe's misconduct harmed his client L.M. L.M. had to spend time and financial resources to retain new counsel and take other actions to challenge the inaccurate final account. Moe's failure to pay restitution caused financial harm to the beneficiaries of R.M.'s estate because he deprived them of funds to which they were entitled.

Moe's misappropriation of R.M.'s funds, failure to pay restitution to R.M.'s estate, and failure to comply with discovery requests also reflect poorly on the profession and undermine the public's trust in lawyers. *See In re Nathanson*, 812 N.W.2d 70, 79 (Minn. 2012) (stating that the profession is harmed when an attorney causes needless expenditure of judicial and opposing counsel resources); *In re Fairbairn*, 802 N.W.2d at 743 (stating that "[m]isappropriation of any kind, by its very nature," harms both the public at large and the legal profession).

The presence of aggravating or mitigating circumstances also affects the severity of discipline imposed. *In re Hummel*, 839 N.W.2d at 81. Moe's failure to file an answer to the petition precludes our consideration of any mitigating circumstances that may exist. *See In re Ulanowski*, 834 N.W.2d 697, 703-04 (Minn. 2013) (explaining that the attorney must allege and prove mitigating factors). The Director does not argue that any aggravating circumstances are present in this case. Nevertheless, given the serious misconduct that Moe committed, we conclude that disbarment is the appropriate sanction.

Accordingly, we hereby order that:

1.     Respondent Paul Arthur Moe is disbarred from the practice of law in the State of Minnesota, effective upon the date of filing of this opinion;

9

2.    Moe shall comply with Rule 26, RLPR (requiring notice of disbarment to clients, opposing counsel, and tribunals); and

3.    Moe shall pay $900 in costs pursuant to Rule 24, RLPR.